[No. E030845. Fourth Dist., Div. Two. Jan. 20, 2004.]

MICHAEL SCHWAB et al., Plaintiffs and Respondents, v.
SOUTHERN CALIFORNIA GAS COMPANY et al. Defendants,
Cross-complainants and Respondents;
B & SONS CONSTRUCTION, INC., Defendant, Cross-defendant and
Appellant.

1312

COUNSEL

Lorber, Greenfield, Polito & Pengilly, Bruce W. Lorber and David B. Roper for Defendant, Cross-defendant, and Appellant.

Zimmerman & Kahanowitch, Brian F. Zimmerman; Ryneal & Ryneal and F. Steve Ryneal for Plaintiffs and Respondents.

Kingsley Hines and Donald A. Redd for Defendant, Cross-complainant, and Respondent Southern California Edison Company.

Post Kirby Noonan & Sweat, Gregory A. Post and Jacob Slania for Defendant, Cross-complainant, and Respondent Southern California Gas Company.

Haight, Brown & Bonesteel, Peter Q. Ezzell, Kevin R. Crisp, Denis J. Moriarty, and Jules S. Zeman for Defendant, Cross-complainant, and Respondent City of San Jacinto.

OPINION

KING, J.—

## INTRODUCTION

Defendant, B & Sons Construction, Inc. (B & Sons), appeals from the trial court's order denying its motion to set aside defaults and judgments entered in favor of Michael and Sherry Schwab (plaintiffs), and defendants/cross-complainants, Southern California Gas Company (the Gas Company), Southern California Edison Company (SCE), and the City of San Jacinto (the City). (Code Civ. Proc., § 473.)[1] We affirm the defaults and judgments entered in favor of plaintiffs and the Gas Company. We reverse the defaults and judgments entered in favor of SCE and the City.

Plaintiffs' complaint sought money damages for personal injuries against B & Sons, the Gas Company, SCE and the City. By their cross-complaints, the Gas Company, SCE, and the City sought equitable indemnity and contribution from B & Sons. None of the pleadings stated any amount of money damages. B & Sons was properly served with the complaint and cross-complaints, but failed to answer any of them.

B & Sons contends that the four defaults and judgments entered against it are void, because it was not served with statements of damages within a

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

reasonable time before any of the defaults were entered. As we explain, this contention fails regarding plaintiffs and the Gas Company, because they complied with the statutory procedures for obtaining the defaults and judgments by properly serving statements of damages on B & Sons within a reasonable time before the defaults were entered. (§§ 425.10 et seq. & 585 et seq.) These defaults and judgments are therefore valid.

In contrast, SCE and the City failed to comply with the statutory procedures. They did not properly serve B & Sons with any notice of the amount of money damages they were seeking, within a reasonable time before B & Sons' defaults were entered on their respective cross-complaints. For this reason, the defaults and judgments in favor of SCE and the City are invalid and must be reversed.

### SUMMARY OF FACTS AND PROCEDURAL HISTORY

In 1996, Michael Schwab was severely burned in an explosion and fire. In 1997, Michael Schwab and his wife, Sherry Schwab, sued B & Sons, the Gas Company, SCE, the City, and other defendants for personal injuries. Shortly thereafter, the Gas Company, SCE, and the City cross-complained against B & Sons for indemnity and contribution.

B & Sons filed for bankruptcy in 1993, and its corporate status was suspended by the California Franchise Tax Board in 1994. B & Sons never responded to the complaint or cross-complaints. B & Sons' primary and excess liability insurance carriers denied coverage and never intervened in the action.

In 2000, plaintiffs settled their claims against the Gas Company, SCE, the City, and other parties. Thereafter, plaintiffs and cross-complainants applied for default judgments against B & Sons. At an August 17, 2001, default prove-up hearing, the trial court noted that SCE and the City had not personally served B & Sons with statements of damages before defaults were entered in their favor. Representatives of B & Sons' insurers were in the courtroom, taking notes.

The August 17 hearing was continued to August 31. On August 22, SCE and the City personally served statements of damages on B & Sons. At the August 31 hearing, B & Sons appeared in the action for the first time through Attorney Bruce W. Lorber. Mr. Lorber argued that some of the defaults entered against it were void, because statements of damages had not been personally served. He requested time to brief this issue. He further stated that he had answers in his briefcase and was prepared to file them, should the court grant him leave. The trial court denied these requests.

At the same August 31 hearing, the trial court vacated the previous defaults in favor of SCE and the City, but reentered them *nunc pro tunc* effective

August 19, three days before August 22, the date SCE and the City personally served B & Sons with statements of damages. The trial court entered default judgments in favor of the plaintiffs, the Gas Company, SCE, and the City on August 31 and September 21. On September 25, 2001, B & Sons filed a motion to set aside the defaults and judgments, under section 473. This motion was heard and denied on October 30. On December 17, B & Sons filed a notice of appeal from the October 30, order.

## FACTS AND PROCEDURAL HISTORY

### A. *The 1996 Explosion and Fire*

In 1996, Michael Schwab suffered severe burns after a natural gas explosion and fire erupted in a building where he was working. Natural gas had seeped into the building from a hole in a steel gas line located under the alleyway behind the building. The hole in the steel gas line was at the "exact point" where it crossed under an old, abandoned steel water main.

In 1990, B & Sons, under contract with the City, installed a plastic water main under the alleyway behind the building. During the installation process, B & Sons caused the steel gas line and the old, abandoned steel water main to come into virtual contact with each other. Between 1990 and 1996, episodes of electrical arcing occurred between the two utility lines, causing the hole in the steel gas line and seepage of natural gas into the building.

The electrical arcing episodes occurred during "ground faults" that emanated from SCE's electrical substation, located about a block away from the building. During a "ground fault," electrical current is discharged into the surrounding soil. Electrical arcing occurs when two metal utility lines are in contact or near contact with each other.

### B. *B & Sons' Bankruptcy and Subsequent Franchise Tax Board Suspension*

Several years before the 1996 explosion, on March 28, 1991, B & Sons filed for chapter 11 bankruptcy. On March 1, 1993, the chapter 11 bankruptcy was converted into a chapter 7 bankruptcy. Effective May 2, 1994, B & Sons was suspended by the California Franchise Tax Board, and remained suspended at all times relevant to this appeal. On February 23, 1995, the trustee in bankruptcy filed a final report confirming that the estate had no substantial assets.

### C. *B & Sons' Insurance Policies*

B & Sons was insured under a $1 million primary general liability policy issued by National Union Fire Company (National Union) and a $5 million

excess liability policy issued by First States Insurance Company (First States). The City was an additional insured on both policies, pursuant to its contract with B & Sons.

### D. *The Complaint and Cross-complaints*

In early 1997, plaintiffs filed and served a complaint for personal injuries, naming B & Sons, the Gas Company, SCE, and the City as defendants.[2] Plaintiffs' complaint was based on the alleged negligent installation of the plastic water main and the ensuing explosion and fire. Michael Schwab alleged he had suffered permanent physical injuries and other damages. Sherry Schwab alleged damages for loss of consortium. In mid-1997, the Gas Company, SCE, and the City each filed and served cross-complaints against B & Sons, seeking indemnity, contribution, and allocation of fault in connection with any judgments entered against them.[3] B & Sons did not respond to the complaint or cross-complaints.

Both before and after plaintiffs' complaint was served on B & Sons, plaintiffs' counsel advised B & Sons' primary insurer, National Union, of plaintiffs' claims and suggested that National Union defend the action on behalf of B & Sons or face entry of default. National Union took the position that its policy was an "occurrence" policy, and that because the alleged negligence of its insureds (B & Sons and the City) and the resulting damages did not occur within the policy period, it was denying coverage and a defense to B & Sons and the City. Neither National Union nor First States ever intervened in the action.

### E. *Plaintiffs' 1997 Statement of Damages and Default*

On June 23, 1997, plaintiffs personally served a statement of damages on B & Sons, pursuant to section 425.11. The statement of damages advised that Michael Schwab was seeking $10 million in general damages and $7 million in special damages, and that Sherry Schwab was seeking $3 million in general damages. Fifteen days later, on July 7, 1997, the clerk entered B & Sons' default on plaintiffs' complaint.

### F. *The Global Settlement*

Between 1997 and 2000, all parties who had appeared in the consolidated action engaged in extensive discovery and settlement negotiations. Over 100

---

[2] Plaintiffs' complaint was consolidated with eight other lawsuits involving claims for personal injury, property damage and business losses, property casualty subrogation claims, and workers' compensation subrogation.

[3] The Gas Company, SCE, and the City also filed cross-complaints against each other and additional parties.

depositions were taken and mediations were conducted. A claims representative and an attorney for National Union attended a July 2000 noncourt-supervised mediation, but consistently denied coverage for plaintiffs' injuries.

In 2000, plaintiffs settled their claims against the Gas Company, SCE, and the City, for the total sum of $4,817,196. As part of the settlement, the Gas Company, SCE, and the City agreed to pay additional sums to other plaintiffs and parties in the action.

## G. *The Applications for Default Judgments*

In early 2001, plaintiffs, the Gas Company, SCE, and the City each filed and served applications for default judgments against B & Sons, with supporting documentation.[4] A hearing on the applications was held on August 17, 2001. As of that date, B & Sons had still not appeared in the action, nor had its insurers intervened. But representatives of its insurers were present in the courtroom, taking notes.

At the August 17, 2001, hearing, the trial court determined that plaintiffs and the Gas Company were entitled to default judgments against B & Sons. Plaintiffs were awarded the net sum of approximately $7.8 million, plus costs, on their complaint against B & Sons. The Gas Company was awarded $2,038,680, plus costs, on its cross-complaint against B & Sons. These default judgments were entered on August 31, 2001.

At the August 17 hearing, the trial court noted that SCE and the City had failed to personally serve statements of damages under section 425.11 before B & Sons' defaults were taken on their cross-complaints. The trial court set a further hearing for August 31, 2001, and admonished SCE and the City to personally serve statements of damages, or provide authority for entering defaults without personal service.

## H. *The August 31, 2001, Continued Default Judgment Hearing*

At the continued hearing on August 31, 2001, B & Sons appeared in the action for the first time through Attorney Bruce W. Lorber. Mr. Lorber advised that he had reviewed the transcript of the August 17 hearing, and wished to address the "procedural due process" issues that the trial court raised on August 17. He also argued that the judgments included noneconomic damages in excess of B & Sons' proportionate liability, in violation of Civil Code section 1431.2.

---

[4] Plaintiffs' supporting evidence included the declaration of civil engineer Ronald Carducci. Mr. Carducci opined that B & Sons was the "principal cause" of the 1996 explosion and fire, based on its negligent work in installing the plastic water main.

Mr. Lorber advised that B & Sons remained a suspended corporation and that B & Sons' insurers were not able to retain counsel to defend it until January 1, 1999. (Rev. & Tax. Code, § 19719, subd. (b).) He said that B & Sons' insurers had recently retained him to appear and defend B & Sons in the action.

Mr. Lorber requested a 30-day continuance to brief the issue of why "at least three" unspecified defaults were void due to lack of personal service of statements of damages. He also requested leave to file answers, which he represented were in his briefcase. The trial court denied both requests and advised that B & Sons could file a motion to set aside the defaults.

The trial court then turned to the City's default judgment. On August 22, 2001, the City personally served an amended statement of damages on B & Sons, specifying $2,433,540, plus costs of $16,719. The trial court vacated the default against B & Sons that the clerk had entered several months earlier on the City's cross-complaint and reentered the default nunc pro tunc effective August 19. On August 31, 2001, judgment was entered in favor of the City, in the principal amount of $2,450,259, plus costs.[5]

The trial court then addressed SCE's default judgment. SCE also personally served a statement of damages on August 22, 2001, specifying $1,431,551, plus costs. The trial court also vacated the default that had previously been entered on SCE's cross-complaint, and reentered it nunc pro tunc effective August 19. On September 21, 2001, judgment was entered in favor of SCE in the principal amount of $1,409,250, plus costs.[6]

## I. B & Sons' Motion to Vacate Defaults and Default Judgments

On September 25, 2001, B & Sons filed a motion for relief from default and to set aside judgments in favor of the plaintiffs, the Gas Company, SCE, and the City. The motion was heard and denied on October 30, 2001. In denying the motion, the trial court reasoned that neither B & Sons nor its insurers had demonstrated due diligence in appearing in the action or in moving to set aside the defaults. Regarding the defaults and judgments in favor of SCE and the City, the trial court noted that it made no sense to require a cross-complainant to serve a statement of damages when plaintiffs already had. The trial court observed that B & Sons was relying on a technicality and had waived any objection by failing to appear earlier in the action.

---

[5] The principal amount of the City's judgment consists of $2 million paid to the Schwabs, plus additional monies paid to other parties in the consolidated actions. The City's costs of $16,719 were erroneously counted twice in calculating the judgment.

[6] The principal amount of SCE's judgment consists of $1.2 million paid to the Schwabs, plus additional monies paid to other parties in the consolidated actions.

## DISCUSSION

A. *B & Sons' Motion to Set Aside the Defaults and Judgments Was Properly Denied Under Section 473, Subdivision (b)*

B & Sons' motion to set aside the defaults and judgments was made under section 473, subdivision (b). We conclude that the motion was properly denied under this provision.

A trial court may, within its discretion, relieve a party from a judgment, order, or other proceeding, including a default, taken against it through its mistake, inadvertence, surprise, or excusable neglect, provided the motion is made within a reasonable time, not exceeding six months. (§ 473, subd. (b).) The moving party has the burden of showing that a default or judgment was taken against it through its mistake, inadvertence, surprise, or excusable neglect. If it fails to make this showing, " 'the court may not grant relief. It has no discretion.' " (*Parage v. Couedel* (1997) 60 Cal.App.4th 1037, 1042 [70 Cal.Rptr.2d 671].)

B & Sons made no showing that any default or judgment was taken against it through its mistake, inadvertence, surprise, or excusable neglect. Rather, it noted that its insurers were unable to retain counsel to defend it until January 1, 1999, when Revenue and Taxation Code section 19719 was amended.[7] But it failed to explain why its insurers waited over two and one-half years, until August 2001, to retain counsel to defend it in the action, or why its insurers never intervened in the action.[8]

■ The evidence showed that B & Sons and its insurers were aware of plaintiffs' and the other cross-complainants' claims in 1997, *before* any of the defaults and judgments were entered. Yet, neither appeared in the action until the trial court was about to enter default judgments against B & Sons. In sum, no default or judgment was taken against B & Sons through its mistake,

---

[7] Revenue and Taxation Code section 19719, subdivision (a), prohibits any person from attempting or purporting to exercise the powers, rights, and privileges of a corporation that has been suspended pursuant to Revenue and Taxation Code section 23301. Effective January 1, 1999, the statute was amended to add subdivision (b), which provides that "[t]his section shall not apply to any insurer, or to counsel retained by an insurer on behalf of the suspended corporation, who provides a defense for a suspended corporation in a civil action based upon a claim for personal injury, property damage, or economic losses against the suspended corporation . . . ." (Rev. & Tax. Code, § 19719, subd. (b).)

[8] The insurers had a direct and immediate interest in the subject of the action, and therefore had a right to intervene in the action. (§ 387, subd. (b); Ins. Code, § 11580; *Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865, 884–885 [151 Cal.Rptr. 285, 587 P.2d 1098]; accord, *Reliance Ins. Co. v. Superior Court* (2000) 84 Cal.App.4th 383, 387 [100 Cal.Rptr.2d 807].)

inadvertence, surprise, or excusable neglect. Thus, the trial court properly denied B & Sons' motion under section 473, subdivision (b).

B. *The Defaults and Judgments Entered in Favor of Plaintiffs and the Gas Company Are Valid, But Those Entered in Favor of SCE and the City Are Void and Should Have Been Set Aside Pursuant to Section 473, Subdivision (d)*

Section 473, subdivision (d), authorizes the trial court to "set aside any void judgment or order" upon a noticed motion. (*Stevenson v. Turner* (1979) 94 Cal.App.3d 315, 318 [156 Cal.Rptr. 499].) The motion may be made at any time. (*Heidary v. Yadollahi* (2002) 99 Cal.App.4th 857, 862 [121 Cal.Rptr.2d 695]; *Plotitsa v. Superior Court* (1983) 140 Cal.App.3d 755, 761 [189 Cal.Rptr. 769].) It is immaterial how the invalidity is called to the court's attention. (*Baird v. Smith* (1932) 216 Cal. 408, 410 [14 P.2d 749].) A prematurely entered default is invalid, and any judgment entered after an invalid default is also invalid. (*Ibid.*; accord, *Gamet v. Blanchard* (2001) 91 Cal.App.4th 1276, 1286 [111 Cal.Rptr.2d 439].)

Section 585 establishes procedures for obtaining defaults and default judgments. A default may be entered only after the defendant has been served with a summons[9] and has failed to answer or file other responsive papers within the time prescribed in the summons, or such further time as may be allowed. (§ 585, subds. (a)–(c) & (e).)

A complaint must state the amount of money damages or other relief it seeks. (§ 425.10.) An exception applies where a complaint seeks damages for personal injury or wrongful death. (§ 425.11.) In these cases, the nature and amount of money damages must not be stated in the complaint, but must be stated in a separate statement described in section 425.11. (*Ibid.*; § 425.10.) The statement must be served in the same manner as a summons, *before a default may be entered* on the underlying complaint. (§ 425.11, subd. (d)(1).)

Together, the statutes require that, before a default may be entered, the defendant must be served, in the same manner as a summons, with notice of the amount of money damages or other relief sought. (§§ 425.10, 425.11, 585.) The statutes apply with equal force to cross-complaints and cross-defendants. (§§ 425.10, 587.5.)

The statutes preserve the defendant's right to contest an action and protect the defendant from unlimited liability. "Section 580, and related sections 585,

---

[9] A summons may be served in the manner prescribed in sections 415.10 through 415.50. A suspended corporation may be served with a summons in the manner prescribed in sections 416.10 and 416.20. (*Gibble v. Car-Lene Research, Inc.* (1998) 67 Cal.App.4th 295, 302–303 [78 Cal.Rptr.2d 892].)

586, 425.10 and 425.11, aim to ensure that a defendant who declines to contest an action does not thereby subject himself to open-ended liability." (*Greenup v. Rodman* (1986) 42 Cal.3d 822, 826 [231 Cal.Rptr. 220, 726 P.2d 1295] (*Greenup*).) "The notice requirement of section 580 was designed to insure fundamental fairness." (*Becker v. S.P.V. Construction Co.* (1980) 27 Cal.3d 489, 494 [165 Cal.Rptr. 825, 612 P.2d 915].)

██ Our state appellate courts have long held that due process requires *formal notice* of the defendant's potential liability, by service in the same manner as a summons. Under this view, actual notice is insufficient. "[T]he Courts of Appeal have insisted that *due process requires formal notice* of potential liability; actual notice may not substitute for service of an amended complaint. [Citation.] [¶] . . . [¶] It is precisely when there is no trial . . . that *formal notice*, and therefore the requirement of section 425.10, become[s] critical. Notice is at the heart of the provision, as the Legislature underscored by adding section 425.11 . . . ." (*Greenup, supra,* 42 Cal.3d at pp. 826–827, italics added.) "Section 580 constitutes a statutory expression of the mandates of due process, which require 'formal notice of potential liability.' " (*Parish v. Peters* (1991) 1 Cal.App.4th 202, 207 [1 Cal.Rptr.2d 836].)

Our state Supreme Court has concluded that "due process requires *notice* to defendants, whether they default by inaction or by wilful obstruction, of the potential consequences of a refusal to pursue their defense. Such notice enables a defendant to exercise his right to choose—at any point before trial, even after discovery has begun—between (1) giving up his right to defend in exchange for the certainty that he cannot be held liable for more than a known amount, and (2) exercising his right to defend at the cost of exposing himself to greater liability." (*Greenup, supra,* 42 Cal.3d at p. 829, italics added.)

The high court later observed that "[i]t is a fundamental concept of due process that a judgment against a defendant cannot be entered unless he was given *proper notice* and an opportunity to defend. [Citations.]" (*In re Marriage of Lippel* (1990) 51 Cal.3d 1160, 1166 [276 Cal.Rptr. 290, 801 P.2d 1041], italics added.) The federal constitutional standard is whether the notice is "reasonably calculated, under all the circumstances" to apprise the defendant of the relief sought. (*Dusenbery v. U.S.* (2002) 534 U.S. 161, 167–168 [151 L.Ed.2d 597, 122 S.Ct. 694]; *Mullane v. Central Hanover B. & T. Co.* (1949) 339 U.S. 306, 313–315 [94 L.Ed. 865, 70 S.Ct. 652].)

Regardless of whether formal notice is constitutionally required, formal notice is statutorily required. (§§ 425.10, 425.11, 585.) Formal notice is "an essential prerequisite to a valid default judgment." (*Engebretson & Co. v. Harrison* (1981) 125 Cal.App.3d 436, 443–444 [178 Cal.Rptr. 77] (*Engebretson*) [mail service of amended complaint inadequate notice].)

■ And, where section 425.11 applies, the statement of damages must separately state the amounts of special and general damages sought. "Section 425.11 has been construed to require 'a statement of both special and general damages sought [because] . . . such information aids a defendant in evaluating the validity of plaintiff's damage claims with regard to their provability.' " (*Jones v. Interstate Recovery Service* (1984) 160 Cal.App.3d 925, 929 [206 Cal.Rptr. 924].)

In all types of actions, it is unsettled whether notice on a nonappearing defendant must be served at least 30 days before a default may be taken, or whether a shorter period satisfies the applicable statutes or due process. In personal injury actions, some courts have held that a defendant must be given 30 days to respond to a statement of damages, because the statement is akin to an amended complaint. (E.g., *Plotitsa v. Superior Court, supra,* 140 Cal.App.3d at p. 761; *Twine v. Compton Supermarket* (1986) 179 Cal.App.3d 514, 517 [224 Cal.Rptr. 562].)

But in *Schwab v. Rondel Homes, Inc.* (1991) 53 Cal.3d 428, 435 [280 Cal.Rptr. 83, 808 P.2d 226] (*Schwab*), our state Supreme Court noted that "[a] defendant is entitled to actual notice of the liability to which he or she may be subjected, *a reasonable period of time* before default may be entered."[10] (Italics added.) Following *Schwab*, Division Three of this court held that "there is no hard and fast rule regarding the precise method or timing of service of the section 425.11 statement of damages. Rather, we are to determine in each case whether minimum standards of due process have been met." (*California Novelties, Inc. v. Sokoloff* (1992) 6 Cal.App.4th 936, 945 [7 Cal.Rptr.2d 795] (*California Novelties*).)[11]

■ Nothing in section 425.11 provides that a nonappearing defendant must be given at least 30 days' notice of the amount of damages the plaintiff seeks before the defendant's default may be taken. Nor do sections 585 or 425.10 provide for a minimum notice period. Thus, in our view, the case-by-case approach of the *California Novelties* court satisfies the applicable statutes and the requirements of due process. Next, we discuss the statutes in relation to the defaults and judgments entered in favor of plaintiffs, the Gas Company, SCE, and the City.

---

[10] Notably, *Schwab* was decided before 1993, when section 425.11, subdivision (d), was amended to require service of the statement in the same manner as a summons. Thus, after 1993, actual notice does not satisfy section 425.11. Nor does it satisfy the requirements of sections 585, 425.10, and 425.115, which apply in non-personal injury and wrongful death actions.

[11] The *California Novelties* court held that 17 days' service by mail prior to entry of default was sufficient to give the defendant actual notice of his potential liability and afforded him a reasonable period of time to respond. (*California Novelties, supra,* 6 Cal.App.4th at p. 945.) *California Novelties* was also decided before section 425.11, subdivision (d), was amended in 1993 to require formal notice.

### 1. *Plaintiffs' Default and Judgment*

On June 23, 1997, plaintiffs complied with section 425.11 by personally serving a statement of damages on B & Sons. The statement set forth the amounts of general and special damages that each plaintiff was seeking. B & Sons' default was entered on July 7, 1997, 15 days after the statement was served. More than three years later, on August 31, 2001, a default judgment was entered in the aggregate amount of about $7.8 million. The amounts awarded to each plaintiff were less than the amounts set forth in plaintiffs' statement of damages.

■ B & Sons has not explained why the default or judgment in favor of plaintiffs is invalid, and we discern no reason. B & Sons had 15 days to respond to plaintiffs' statement of damages. This was a reasonable period of time, given that B & Sons was properly served with the summons and complaint more than 30 days before the statement was served. The default on plaintiffs' complaint is therefore valid. The judgment is also valid, because it did not exceed the amounts set forth in plaintiffs' statement of damages.

### 2. *The Gas Company's Default and Judgment*

It is unsettled whether section 425.11 applies to a cross-complaint for indemnity and contribution in a personal injury action. The parties have not directed our attention to any case that has decided this issue, and we have found none. In any event, a valid default and judgment require formal notice, in some form, of the nature and amount of damages sought, within a reasonable time before default is entered. The Gas Company complied with these requirements.

The Gas Company personally served B & Sons with a statement of damages on June 8 and 13, 2001. The statement set forth $11,740 in property damages and $2,026,940 in other damages. It included a detailed declaration stating that the amounts sought were paid in settlement of various claims in the action, including plaintiffs' claims, and it identified the persons to whom each amount was paid. The statement was sufficiently specific to allow B & Sons to make an informed decision whether to appear and defend the cross-complaint.

■ B & Sons' default was entered on August 1, 2001, more than six weeks after the Gas Company's statement of damages was properly served. This allowed B & Sons a reasonable time to determine whether to appear and defend the action. On August 31, 2001, the trial court entered judgment in favor of the Gas Company in the specific amounts set forth in the statement, plus costs. B & Sons has not offered any reason why the default or judgment

in favor of the Gas Company are invalid, and we discern none. The Gas Company gave formal notice of the amounts it was seeking well before the default and judgment were entered.

### 3. *SCE's and the City's Defaults and Judgments*

On February 5, 2001, the City filed and served a statement of damages on B & Sons, *by mail*, together with an application for default judgment and supporting documents. The City's statement set forth $2,450,259 in total damages, including costs. On June 7, 2001, SCE also served a statement of damages on B & Sons *by mail*. SCE's statement set forth $1,409,250 in total damages, plus costs of $40,880.

██ Neither statement of damages was served in the same manner as a summons, as section 425.11, subdivision (d), requires. And even if the City's and SCE's cross-complaints are not subject to section 425.11, the City and SCE failed to give formal notice, in some form, of the amount of money damages they were seeking within a reasonable time before the defaults were entered.

At the trial court's suggestion, SCE and the City personally served statements of damages on B & Sons, on August 22, 2001. Then, on August 31, the trial court entered B & Sons' defaults nunc pro tunc effective August 19, three days *before* the statements were properly served.[12] This gave B & Sons *no time* to respond to the cross-complaints, after it was finally given formal notice of the amount of damages the City and SCE were seeking. For this reason, the defaults and judgments in favor of SCE and the City are *invalid and must be set aside.*

██ The City notes that B & Sons had *actual notice* of the amount of damages it was seeking.[13] But actual notice does not satisfy the formal notice requirements of sections 425.10 et seq. and 585. Courts have consistently held that formal notice is "an essential prerequisite" to a valid default and judgment. (E.g., *Engebretson, supra,* 125 Cal.App.3d at pp. 443–444.) A plaintiff's or cross-complainant's failure to give formal notice of the amount of money damages it seeks constitutes a critical defect in the proceedings. The clerk or judge has no authority to enter a default unless and until formal notice is given. (§§ 425.10 et seq. & 585.) And failure to give formal notice

---

[12] This occurred apparently because SCE's and the City's statements of damages were file-stamped August 19, although they were personally served on August 22.

[13] On June 21, 2001, the City mailed a letter to B & Sons informing it of the August 17, 2001, default judgment hearing, and urging it to contact its insurers. On June 25, 2001, a B & Sons representative telephoned the City's counsel and acknowledged receipt of the City's letter.

may deprive a defendant of due process. For these reasons, a default entered without formal notice of the amount or other relief or amount sought is invalid.

"[S]ection 580 is to be interpreted, in accordance with its plain language, *to deprive a trial court of jurisdiction* to enter a judgment against a defaulting defendant which awards greater relief than that sought in the plaintiff's complaint." (*In re Marriage of Lippel, supra,* 51 Cal.3d at p. 1167, italics added; accord, *Finney v. Gomez* (2003) 111 Cal.App.4th 527, 534 [3 Cal.Rptr.3d 604] [section 580 is "an unqualified limit on the jurisdiction of courts entering default judgments"].) Similarly, sections 585 and 425.10 et seq. deprive the clerk and trial court of jurisdiction to enter a default, unless the defendant has been given formal notice of the amount of money damages or other relief sought.

SCE and the City maintain that they should be able to rely on plaintiffs' 1997 statement of damages, because it encompassed "the entire universe" of the damages that they and the Gas Company were seeking. We disagree. The indemnity and contribution claims of the Gas Company, SCE, and the City were not limited to the amounts they paid to plaintiffs, but encompassed substantial sums paid to other parties in the consolidated actions. Plaintiffs' statement of damages did not encompass amounts paid to or claimed by other parties.

Moreover, sections 425.10 et seq. and 585 require formal notice of the amount of money damages or other relief sought *by the party seeking relief.* As the *Greenup* court explained, the notice requirement enables a defendant to choose between (1) allowing his default to be taken, knowing he cannot be held liable for an amount greater than the amount noticed, and (2) defending the action and risking greater liability. (*Greenup, supra,* 42 Cal.3d at p. 829.) To make an informed choice between these alternatives, a defendant must be given notice of the amount each plaintiff or cross-complainant is seeking.

SCE and the City further argue that section 425.11 does not apply to their cross-complaints for indemnity or contribution. They note that no case has held that section 425.11 applies to a cross-complaint for indemnity or contribution, even where the claims are based on personal injury or wrongful death damages. Regardless of whether section 425.11 applies, however, SCE and the City did not properly serve B & Sons with any formal notice of the money damages they were seeking within a reasonable time before B & Sons' defaults were taken on their cross-complaints. The statutes require that notice, in some form, of the amount sought must be given.

In *Wiley v. Rhodes* (1990) 223 Cal.App.3d 1470 [273 Cal.Rptr. 279], which was decided before the enactment of section 425.115, the court held that the

plaintiff's failure to give notice, in some form, of the amount of punitive damages sought, rendered its judgment for punitive damages void. The court noted that, although it was not proper to state the amount of punitive damages in the complaint (Civ. Code, § 3295, subd. (e)), the Legislature's failure to specify how the defendant was to be provided with notice did not excuse the requirement of giving notice before entry of default. (*Wiley v. Rhodes, supra,* at pp. 1473–1474 & fn. 3.)

 SCE and the City maintain that they were unable to give any notice of the precise amount of damages they were seeking until after they settled the claims pending against them. They argue that applying the statutory notice requirements to a cross-complaint for indemnity and contribution would encourage cross-defendants not to appear in the action for years, then appear and contest their liability only after they are served with notice of the amount of damages sought. We are not persuaded. Here, the cross-complaints for indemnity and contribution *ultimately* sought money judgments. Nothing prevented SCE or the City from estimating and properly serving B & Sons with notice of the amount of money damages they were seeking, at any time. Sections 585 and 425.10 et seq. do not require notice of a precise amount of damages.

We note that, where a defendant possesses information from which it may "precisely calculate the amount for which it could be liable if it chose to default," *no notice* of the amount of damages sought must be given. (E.g., *Cassel v. Sullivan, Roche & Johnson* (1999) 76 Cal.App.4th 1157, 1163 [90 Cal.Rptr.2d 899].) This is a limited exception to the statutory notice provisions, which does not apply in the present case. In *Cassel*, an attorney sued his law partnership for an accounting and for the value of the attorney's partnership interest. The partnership was in possession of the partnership agreement, which included a formula for calculating the value of the partnership interest, and the partnership's financial information. (*Id.* at pp. 1163–1164.) Here, however, B & Sons was not in possession of information from which it could have calculated the amount of its financial exposure independent of the statements that SCE and the City served by mail. (Cf. *In re Marriage of Andresen* (1994) 28 Cal.App.4th 873, 879–880 [34 Cal.Rptr.2d 147] [husband on notice that court would determine value of assets and liabilities listed in wife's marital dissolution petition].)

Accordingly, the defaults and judgments in favor of the City and SCE are void. The trial court erred in failing to set them aside under section 473, subdivision (d).

C. *We Have No Jurisdiction to Consider B & Sons' Direct Attack on the Judgments Entered in Favor of Plaintiffs and the Gas Company*

B & Sons contends the trial court erroneously calculated the judgment amounts, because it failed to apportion noneconomic damages to B & Sons in proportion to its percentage of fault. (Civ. Code, § 1431.2, subd. (a).) Because we reverse the judgments favoring SCE and the City, we need not consider this contention as it pertains to them.

Additionally, we have no jurisdiction to consider this contention as it pertains to plaintiffs' and the Gas Company's judgments, because it constitutes a direct attack on these judgments. As such, it lies outside the scope of this appeal. B & Sons appealed from the trial court's October 30, 2001, order denying its motion to vacate and set aside the defaults and judgments. It did not appeal from the judgments.

"A motion to vacate or set aside the judgment, if made after the statutory time has elapsed for direct attack by motion, or if made on grounds or procedure not authorized by the statutes governing direct attack, is a collateral attack." (8 Witkin, Cal. Procedure (4th ed. 1997) Attack on Judgment in Trial Court, § 8, p. 516.) "A collateral attack will lie only for a claim that the judgment is void on its face for lack of personal or subject matter jurisdiction or for the granting of relief which the court has no power to grant." (*Molen v. Friedman* (1998) 64 Cal.App.4th 1149, 1156 [75 Cal.Rptr.2d 651].)

Once a judgment is final, collateral attack will not lie for nonjurisdictional errors. "Except in the case of extrinsic fraud, '[a] judgment on the merits that is not void on its face and [thus] subject to collateral attack is protected by the doctrine of res judicata after the time for ordinary direct attack has passed.' " (*Aerojet-General Corp. v. American Excess Ins. Co.* (2002) 97 Cal.App.4th 387, 398, fn. 3 [117 Cal.Rptr.2d 427]; 8 Witkin, Cal. Procedure, *supra*, Attack on Judgment in Trial Court, § 214, pp. 718–719.)

B & Sons' notice of appeal states that it is "from the order . . . entered on or about October 30, 2001, denying the motion of [B & Sons] for relief from default and to set aside judgments." Even if this notice of appeal could be liberally construed to be an appeal from the judgments (Cal. Rules of Court, rule 1), it would be untimely.

Where a notice of entry of judgment or copy of the judgment is served, an appeal from a judgment must be filed on or before the 60th day

after the notice of entry or judgment is served. (Cal. Rules of Court, rule 2(a).) If, within that 60-day period, a party files and serves a valid motion to vacate the judgment, then the time to appeal from the judgment is extended to no earlier than 30 days after service of an order denying the motion. (Cal. Rules of Court, rule 3(b); *In re Marriage of Eben-King & King* (2000) 80 Cal.App.4th 92, 107–108 [95 Cal.Rptr.2d 113].)

Notice of entry of the Gas Company's judgment was served on September 5, 2001. Notice of entry of plaintiffs' judgment was served on October 12, 2001. The order denying B & Sons' motion to vacate the judgments was served on October 30, 2001. This extended the time to appeal from either judgment to November 29, 2001.

If the motion to vacate had not been filed, the time to appeal from the Gas Company's judgment would have expired on November 4, 2001, not November 29, 2001. The time to appeal from plaintiffs' judgment expired on December 11, 2001, notwithstanding service of the order denying the motion to vacate. But B & Sons filed its notice of appeal on December 17, 2001. The notice of appeal was therefore untimely as a notice of appeal from the judgments themselves, as opposed to the order denying the motion to vacate the judgments.

D. *Plaintiffs' Motion to Dismiss B & Sons' Appeal Is Denied*

On June 11, 2002, plaintiffs filed a motion to dismiss B & Sons' appeal, on the ground that B & Sons' opening brief was beyond the scope of the appeal, and that the appeal was untimely. We deferred ruling on the motion for consideration with this appeal. The motion is hereby denied.

In their motion, plaintiffs argued that B & Sons acknowledged in its opening brief that its appeal was untimely, because it was actually being taken from the trial court's August 31, 2001, order denying B & Sons' open-court request to set aside defaults and grant it leave to file answers. We disagree. The notice of appeal explicitly states that it is from the October 30, 2001, order denying B & Sons' motion to vacate defaults and set aside default judgments. And, although the opening brief does not explicitly refer to the October 30, 2001, order, it discusses the same issues that B & Sons raised in its section 473 motion.

## DISPOSITION

The defaults and judgments in favor of plaintiffs and the Gas Company are affirmed. Plaintiffs and the Gas Company shall recover their costs on appeal. The defaults and judgments in favor of SCE and the City are vacated and reversed. B & Sons shall recover its costs on appeal against SCE and the City.

Richli, Acting P. J., and Gaut, J., concurred.