Filed 10/27/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ALYSSA BACKLUND, | B340369 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC449910) |
| v. | |
| CHRISTOPHER STONE, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Daniel S. Murphy, Judge. Affirmed.

Christopher Stone, in pro. per., for Defendant and Appellant.

FEM Law Group and F. Edie Mermelstein for Plaintiff and Respondent.

————————————

In 2010, Alyssa Backlund (Backlund) sued Christopher Stone (Stone) for defamation, intentional infliction of emotional distress (IIED), and related claims. Her complaint did not specify any amounts of damages. Stone hired counsel and defended the lawsuit for some time before his counsel filed a substitution of attorney form, showing that Stone was now self-represented, and listing a P.O. box as Stone's address. Stone then failed to appear or to defend the action, leading to his answer being stricken. Backlund mailed a statement of damages to the address Stone provided on the substitution of attorney form and then got a default judgment against him for more than $1 million.

Backlund renewed the judgment almost a decade later. Stone moved to vacate the renewal on the grounds that the default judgment was void for lack of due process, in that (1) Backlund's action was not one for personal injury, and thus the damages had to be specified in the complaint; (2) even if a statement of damages was appropriate, Backlund did not use the form the Judicial Council adopted for that purpose; and (3) Backlund failed to properly serve Stone with the statement of damages. We reject Stone's contentions and affirm.

## FACTS AND PROCEDURAL BACKGROUND

### 1.    Facts[1]

Stone ran a tabloid-style website called "Stickydrama.com." In November 2009, he posted an image on the website of a teenage girl masturbating next to an infant and falsely identified the teen as Backlund.

In February 2010, Stone obtained a topless photo of Backlund that she had sent to someone else and publicly

---

[1] These facts are drawn from Backlund's complaint.

threatened to share the photo of her "floppy titties . . . all over the place."

In August 2010, Stone filed a small claims action against Backlund for defamation per se, alleging that Backlund had falsely stated that Stone posted child pornography online. Stone never served Backlund in this action but used it to subpoena unrelated information about other young women.

## 2. Procedural History

### A. *Backlund's complaint, Stone's motion to strike*

In November 2010, Backlund sued Stone. She asserted claims for defamation, false light, public disclosure of private facts, abuse of process, IIED, and unfair business practices. Backlund's prayer for relief sought damages "according to proof at the time of trial," but did not specify any amount.

Stone, represented by counsel, filed a motion to strike Backlund's complaint as a strategic lawsuit against public participation (anti-SLAPP motion) under Code of Civil Procedure[2] section 425.16, which was denied.

### B. *Stone's cross-complaint, Backlund's anti-SLAPP motion, and appeal*

Stone then filed a cross-complaint for defamation and IIED based on an interview Backlund had given about Stone that was published on Gawker.com.

Backlund moved to strike Stone's cross-complaint as a SLAPP. The trial court denied that motion, and Backlund appealed. This court reversed the trial court's denial and directed it to strike Stone's cross-complaint as a SLAPP. (*Backlund v. Stone* (Sept. 4, 2012, B235173) [nonpub. opn.].)

---

[2] Undesignated statutory references are to the Code of Civil Procedure.

On remand, the trial court awarded Backlund $109,069.67 in attorney fees against Stone.

**C.  *Stone's substitution of attorney, failure to appear, and trial court's striking of answer***

On April 24, 2013, Stone's attorney filed a substitution of attorney form reflecting that Stone was now self-represented and listing a P.O. box as Stone's address.  Stone signed the form showing his "consent to this substitution."

On May 10, 2013, Backlund moved to strike Stone's answer to her complaint.  After Stone failed to participate in mediation (which he had requested) and failed to appear at the post-mediation status conference on May 15, 2013, the trial court issued an order to show cause.  When he failed to appear at that hearing on June 6, 2013, the trial court granted Backlund's motion to strike his answer and set an order to show cause re default for July 8, 2013.

**D.  *Backlund serves statement of damages***

On June 6, 2013, Backlund mailed a statement of damages to Stone at the P.O. box listed for his address on the substitution of attorney form.

She also served the statement of damages on the courtroom clerk.

Backlund sought $500,000 in general damages, $13,520 in special damages, and $500,000 in punitive damages.

**E.  *Entry of default and default judgment***

On September 30, 2013, the trial court entered default against Stone.

On December 3, 2013, the trial court entered a default judgment against Stone in the amount of $1,128,851.17, consisting of $500,000 in general damages, $320 in special

4

damages (for lost wages), $500,000 in punitive damages, $125,528 in attorney fees, and $3,003.17 in costs. Backlund served the notice of entry of judgment on Stone by sending it to his P.O. box on December 6, 2013.

**F.** ***Renewal of judgment and Stone's motion to vacate***

In November 2023, Backlund filed an application for renewal of judgment, and the judgment was renewed on January 12, 2024.

On March 12, 2024, Stone filed a motion to vacate the renewal of judgment on the grounds that the judgment was void because Backlund's complaint did not specify damages, and her statement of damages was ineffectual because her action was not for personal injury or wrongful death. Backlund filed an opposition to the motion. Stone filed a reply, in which he added the argument that even if Backlund's complaint alleged a personal injury, the judgment is void because she did not serve the statement of damages in the same manner as a summons (§ 425.11, subd. (d)).

On June 10, 2024, the trial court convened a hearing on Stone's motion to vacate the renewal of judgment. The trial court denied the motion, reasoning that Backlund's claims for defamation, IIED, false light, and public disclosure of private facts qualify as personal injury claims such that a statement of damages was the appropriate vehicle to notify Stone of the damages she sought. The trial court's ruling did not address Stone's argument that the statement of damages was not properly served.

Stone moved for reconsideration of the trial court's order denying his motion to vacate judgment, based on the trial court's alleged refusal at the hearing to permit Stone to finish making

5

his legal arguments, including his argument that Backlund's use of a custom statement of damages rather than the Judicial Council form, and her failure to serve it in the same manner as a summons, violated his due process right to formal notice of potential liability.

On August 12, 2024, after full briefing and a hearing, the trial court denied Stone's motion for reconsideration.

## DISCUSSION

Stone argues that the underlying default judgment is void because (1) Backlund's statement of damages was ineffectual because her action was not one for personal injury; (2) even if a statement of damages was appropriate, Backlund failed to use the form adopted by the Judicial Council (CIV-050); and (3) Backlund did not properly serve the statement of damages on Stone. He contends that the trial court therefore erred in denying his motion to vacate the renewal of judgment.

We generally review the trial court's ruling for an abuse of discretion, but we review de novo its determinations of law, such as whether a claim is one for personal injury, and whether a default judgment is void. (*Rubin v. Ross* (2021) 65 Cal.App.5th 153, 161 (*Rubin*); *Dhawan v. Biring* (2015) 241 Cal.App.4th 963, 968 (*Dhawan*).)

1. **Pertinent Law**

   A. *Default judgment*

   When a plaintiff files a lawsuit, the defendant can opt not to respond; the result is a default judgment. (§§ 580, subd. (a), 585, subds. (a) & (b).) The amount of a default judgment " 'cannot exceed that demanded in the complaint, in the statement [of damages] required by Section 425.11, or in the

6

statement provided for by Section 425.115.' " (*Dhawan*, *supra*, 241 Cal.App.4th at p. 968.)

Section 425.11 requires a statement of damages to be separately served on a defendant in "an action to recover damages for personal injury or wrongful death." (§ 425.11, subd. (b).) This section operates in conjunction with section 425.10, which mandates that a complaint for damages resulting from personal injury or wrongful death shall not state the amount of damages sought. (§ 425.10, subd. (b).) The Legislature's purpose in enacting these sections "was to protect defendants in personal injury and wrongful death actions from adverse publicity resulting from prayers in complaints, particularly malpractice complaints, for greatly inflated damage claims bearing little relation to reasonable expectation[] of recovery." (*Plotitsa v. Superior Court* (1983) 140 Cal.App.3d 755, 759 (*Plotitsa*).)

Section 425.115 allows a plaintiff to preserve the right to seek punitive damages on default judgment by serving a statement to that effect. (Code Civ. Proc., § 425.115, subd. (b); see Civ. Code, § 3295, subd. (e) ["No claim for exemplary damages shall state an amount or amounts"].)

**B. *Renewal of judgment***

A money judgment generally expires and may not be enforced upon the expiration of 10 years after the date of its entry. (§ 683.020, subd. (a).) One way to preserve the judgment is to file an application for renewal under sections 683.120 and 683.130 before the expiration of the 10-year enforceability period. (*Kertesz v. Ostrovsky* (2004) 115 Cal.App.4th 369, 372.) This statutory renewal of judgment is an automatic, ministerial act; it does not constitute a new or separate judgment. (*Rubin*, *supra*, 65 Cal.App.5th at p. 165.)

7

A renewal of judgment may be vacated on any ground that would be a defense to an action on the judgment. (§ 683.170, subd. (a).) "[D]efective service of process is a defense which may be raised on a motion to vacate renewal of a judgment." (*Fidelity Creditor Service, Inc. v. Browne* (2001) 89 Cal.App.4th 195, 203.) "A successful motion under section 683.170 does not affect the validity of the default or the default judgment"; it merely precludes the extended enforceability of the judgment. (*Id.* at pp. 203–204.)

2.     **Stone's lawsuit is one for personal injury**

Stone first asserts that Backlund's claims for defamation, false light, public disclosure of private facts, and IIED do not qualify as personal injury claims such that her statement of damages failed to meet the requirement of "formal notice of potential liability." (*Greenup v. Rodman* (1986) 42 Cal.3d 822, 827 (*Greenup*); see *Dhawan, supra,* 241 Cal.App.4th at p. 970 [" 'serving a statement of damages cannot satisfy section 580 in an action not involving personal injury or wrongful death' "].) We disagree; Backlund's defamation and related claims "seek[] to vindicate decidedly personal interests," and are therefore personal injury claims. (*O'Hara v. Storer Communications, Inc.* (1991) 231 Cal.App.3d 1101, 1118 (*O'Hara*) [" 'An injury is personal when it impairs the well-being or the mental or physical health of the victim. . . . In contrast, an injury is not personal when inflicted on property' "]; see also *Truck Ins. Exchange v. Bennett* (1997) 53 Cal.App.4th 75, 85 ["A defamation claim vindicates personal interests, and is a personal injury"]; *Bihun v. AT&T Information Systems, Inc.* (1993) 13 Cal.App.4th 976, 1005 [action for sexual harassment in the workplace under FEHA "seeks to vindicate decidedly personal rights"], disapproved on

8

other grounds in *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 663.)

Stone observes that *O'Hara*'s holding occurred in the context of Civil Code section 3291, which allows a plaintiff to recover interest on damages for personal injury, and not in the context of determining the propriety of a statement of damages under Code of Civil Procedure section 425.11. He fails to explain why this difference matters here, and " '[w]e are not bound to develop appellants' arguments for them.' " (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.)

To support his contention that Backlund's claim is not for personal injury, Stone also points to the civil case cover sheet, on which Backlund checked a box next to "defamation," which is listed under the category of "non-[personal injury] tort." The civil case cover sheet, which "is used for statistical purposes" (Cal. Rules of Court, rule 3.220(a)), does not define the nature of plaintiff's claims for all purposes, and does not sway us from our conclusion here.

### 3. The statement of damages

Having determined that a statement of damages was the proper vehicle for Backlund to notify Stone of her damages, we turn to Stone's contention that her failure to use the form adopted by the Judicial Council (CIV-050) renders the default judgment void. (*W. Bradley Electric, Inc. v. Mitchell Engineering* (2024) 100 Cal.App.5th 1, 13 ["A judgment is void if the trial court lacks jurisdiction in a fundamental sense, as where it lacked subject matter jurisdiction, lacked personal jurisdiction over the defendant, or granted relief the court had no power to grant"].) Stone relies on two statutory provisions to support his argument. Code of Civil Procedure section 425.12, subdivision (b)

9

directs the Judicial Council to "develop and approve an official form for use as a statement of damages," and Government Code section 68511 states that "no *court* may use a different form" (italics added) than that which the Judicial Council developed. Neither of these statutes contains a clear indication that the Legislature intended a party's use of the Judicial Council form to be jurisdictional. (*City of Salinas v. Workers' Compensation Appeals Board* (2025) 113 Cal.App.5th 801, 815 (*Salinas*) ["courts apply a presumption that statutes do not limit fundamental jurisdiction absent a clear indication of legislative intent"].)

Stone also relies on *Fasuyi v. Permatex, Inc.* (2008) 167 Cal.App.4th 681, 688 (*Fasuyi*), which describes CIV-050 as a "*mandatory* form." But " ' "mandatory rules are not necessarily jurisdictional." ' " (*Salinas*, *supra*, 113 Cal.App.5th at p. 816; *Faton v. Ahmedo* (2015) 236 Cal.App.4th 1160, 1170–1171 (*Faton*) [party's failure to use Judicial Council form for attorney fee request did not deprive court of fundamental jurisdiction to award fees].) More to the point, *Fasuyi*'s holding was not about the consequence of a party's failure to use the form; rather, *Fasuyi* held that because the trial court did not have before it "*any* statement of damages," it properly granted the motion to vacate the default judgment. (*Fasuyi*, at pp. 688, 693; see *Wishnev v. The Northwestern Mutual Life Ins. Co.* (2019) 8 Cal.5th 199, 217 [it is " 'axiomatic that a decision does not stand for a proposition not considered by the court' "].)

"[W]here section 425.11 applies, the statement of damages must separately state the amounts of special and general damages sought." (*Schwab v. Southern California Gas Co.* (2004) 114 Cal.App.4th 1308, 1322; accord, *Schwab v. Rondel Homes, Inc.* (1991) 53 Cal.3d 428, 434, disapproved on another ground in

10

*Sass v. Cohen* (2020) 10 Cal.5th 861, 887 & fn. 12.) There is no dispute that Backlund's statement of damages separately states her claimed general and special damages.[3] This was sufficient for our purposes. (Cf. *Faton*, *supra*, 236 Cal.App.4th at pp. 1170–1171.)

4.      **Backlund properly served the statement of damages under section 1013**

For both a statement of damages and a statement to preserve punitive damages[4]: (1) "If a party has not appeared in the action, the statement shall be served in the same manner as a summons," or, (2) "If the party has appeared in the action, the statement shall be served upon [their] attorney, or upon the party if [they have] appeared without an attorney, either in the same manner as a summons . . . or in the manner provided by Chapter 5 (commencing with Section 1010) of Title 14." (§§ 425.11, subd. (d)(1)–(2), 425.115, subd. (g)(1)–(2).)

In this case, Stone *had* appeared in the action, first represented by counsel, and then self-represented. He thereby triggered the second branch, under which service may be made "upon the party if [they] have appeared without an attorney"; this means that Backlund had more options in how she served the statement of damages on Stone: She could either do so "in the same manner as a summons," *or*—as she chose here—"in the

---

[3] Backlund broke her general damages down further into "pain, suffering, and inconvenience" and "emotional distress," and specified her special damages to include "medical expenses," "future medical expenses," and "loss of earnings."

[4] These statements may be combined in one, as was done here. (§§ 425.11, subd. (e), 425.115, subd. (e).)

11

manner provided by Chapter 5 (commencing with Section 1010) of Title 14." (§§ 425.11, subd. (d)((2)), 425.115, subd. (g)(2).)

Chapter 5, which governs "Notices, and Filing and Service of Papers," contains section 1013, which provides: "(a) In case of service by mail, the notice or other paper shall be deposited in a post office, mailbox . . . or other like facility regularly maintained by the United States Postal Service, in a sealed envelope, with postage paid, addressed to the person on whom it is to be served, at the office address as last given by that person on any document filed in the cause and served on the party making service by mail; otherwise at that party's place of residence." (§ 1013, subd. (a).)

Backlund properly served her statement of damages by mailing it to the P.O. box Stone listed on his substitution of attorney form, which was the only address for Stone on file when Backlund served the statement. Stone argues that his former counsel's office was his "address of record" when Backlund mailed the statement of damages because no notice of change of address had been filed, "regardless of whatever was written on the Substitution of Attorney form." He thus argues that, assuming service by mail was permissible, Backlund was required to serve the statement on his former counsel, despite the notice he gave that counsel no longer represented him. This argument defies common sense. Stone's substitution of counsel form served as a notice of change of address in this case, because it notified the court and the parties that Stone was no longer represented by his former counsel and provided Stone's current address. Indeed, Stone did not dispute that he received the statement of damages at the P.O. box he provided and instead explained that he had "stopped opening [Backlund's] mail."

12

Stone nonetheless argues that unlike with a notice of change of counsel form, "[a] party who is not represented by [an] attorney has no notice that providing an address on the form MC-050 constitutes agreement to accept service of process by mail at that address." To support this argument, he points to the additional phrase in a notice of change of address form MC-040 that "[party] has changed his or her address *for service of notices and documents or other contact information*" (italics added). We are not persuaded. A party who has actively litigated the case, who then formally substitutes himself for his former counsel, has adequate notice that he may be served by mail to the only address he provides for himself, especially where the law allows such service, which we conclude it does. (See *Naranjo v. Spectrum Security Services, Inc.* (2024) 15 Cal.5th 1056, 1081 ["the age-old legal maxim 'ignorance of the law is no excuse' " is a principle that "is deeply rooted in the law"]; *Hopkins & Carley v. Gens* (2011) 200 Cal.App.4th 1401, 1413 ["The law does not entitle a party to proceed experimentally without counsel and then turn back the clock if the experiment yields an adverse result"].)

Stone posits that Backlund did not have the option to serve him in the manner provided by section 1010 et seq. and was instead limited to serving him in the same manner as a summons (i.e., §§ 415.10 [personal service on individual], 415.20, subd. (a) [substitute service], 416.90 [authorized agent]). To make this argument, he seizes on the phrase in subdivision (d)(2) of section 425.11 that allows the additional methods of service "upon the party *if [they have] appeared without an attorney*" (italics added). He argues that this qualifying phrase renders him outside the scope of section 425.11, subdivision (d)(2) because he did not

13

appear without an attorney—rather, he appeared with an attorney until he stopped appearing at all. We are not convinced that the Legislature intended the italicized phrase to create such limitation. It seems the Legislature was merely referring to a party who has already appeared in the action and who is self-represented at the time the statement of damages is served. While we are aware of the principle that " 'interpretations which render any part of [the] statute superfluous are to be avoided' " (*Young v. McCoy* (2007) 147 Cal.App.4th 1078, 1083), the canons of construction are aids that "are not to be rotely applied in disregard of other indicia of [legislative] intent" (*California Chamber of Commerce v. Brown* (2011) 196 Cal.App.4th 233, 258 (*Chamber of Commerce*)).[5] Indeed, " '[t]he canon requiring a court to give effect to each word "*if possible*" is sometimes offset by the canon that permits a court to reject words "as surplusage" if "inadvertently inserted or if repugnant to the rest of the statute." ' " (*Cisneros v. Department of Motor Vehicles* (2024) 104 Cal.App.5th 381, 415.)

But we need not decide that issue because, even assuming the Legislature intended to create such limitation, we hold that Stone's filing of a substitution of counsel form, which he signed to

---

[5] " '[A]lthough the rules of grammar and the canons of construction are useful tools in divining a statute's purpose, the normal principles of statutory interpretation may not, in particular circumstances, disclose a clear legislative intent . . . . In such a situation . . . courts must remember that " '[t]hose who write statutes seek to solve human problems. Fidelity to their aims requires us to approach an interpretive problem not as if it were a purely logical game, like a Rubik's Cube, but as an effort to divine the human intent that underlies the statute.' " ' " (*Chamber of Commerce*, *supra*, 196 Cal.App.4th at p. 258.)

14

show his "consent" to said substitution, qualifies as an "appearance" for the purpose of section 425.11, subdivision (d)(2). To hold otherwise would do nothing to further the statute's "obvious purpose[]," which is to require service in the same manner as a summons only for a defendant who has not yet appeared in an action. (*Riley v. Alameda County Sheriff's Office* (2019) 43 Cal.App.5th 492, 502; *In re L.B.* (2023) 88 Cal.App.5th 402, 412 [" ' " 'statutes must be construed so as to give [them] a reasonable and common-sense construction consistent with the apparent purpose and intention of the lawmakers—a construction that is practical rather than technical . . . and will lead to wise policy rather than mischief or absurdity' " ' "].)

Section 1014 lists acts that constitute an appearance, including answers, demurrers, motions to strike, and notices of appearance. Although Stone is correct in his observation that substitution of counsel forms are not expressly mentioned in section 1014, the list "is not exclusive; 'rather the term may apply to various acts which, under all of the circumstances, are deemed to confer jurisdiction of the person. [Citation.] What is determinative is whether defendant takes a part in the particular action which in some manner recognizes the authority of the court to proceed.' " (*Hamilton v. Asbestos Corp., Ltd.* (2000) 22 Cal.4th 1127, 1147.) By filing a substitution of counsel form after having generally appeared and litigated the case, Stone recognized the ongoing nature of the proceedings and consented to continuing on a propria persona basis.

Our conclusion is bolstered by the legislative history of section 425.11. Before the statute was amended in 1993, it required only that "the plaintiff shall give notice to the defendant of the amount of special and general damages sought to be

15

recovered . . . before a default may be taken . . . ." (Stats. 1974, ch. 1481, § 2, p. 3239.) It did not specify how a plaintiff was to give notice. In the absence of any "hard and fast rule regarding the precise method or timing of service" of a statement of damages, *California Novelties, Inc. v. Sokoloff* (1992) 6 Cal.App.4th 936 (*Sokoloff*) held that service by mail on a defendant who had not appeared in the action but who received actual notice of the demand for damages was sufficient to satisfy due process. (*Id*. at p. 945 ["we are to determine in each case whether minimum standards of due process have been met"].)

In response to *Sokoloff* and other cases pointing to the "conundrum created by the interplay of [the] various provisions" governing service of process and default judgments (*Parish v. Peters* (1991) 1 Cal.App.4th 202, 205), the Legislature amended section 425.11 in 1993 to require specific forms of service depending on whether the defendant has appeared in the action. (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 58 (1993–1994 Reg. Sess.) as amended Aug. 16, 1993, p. 3; Sen. Rules Com., Off. of Sen. Floor Analyses, analysis of Assem. Bill No. 58 (1993–1994 Reg. Sess.), as amended Aug. 16, 1993, par. 10 ["If the party has not personally appeared in the action, the statement must be served by personal service. If an appearance has been made, the service may be effected by mail"].)

There is no dispute that Stone made a general appearance when he answered Backlund's complaint. Our conclusion that he "appeared" on his own behalf for purposes of section 425.11, subdivision (d)(2) by formally substituting himself for his counsel is thus consistent with the Legislature's intent to treat parties who have appeared differently from those who have not. It is also consistent with the section's broader purpose " 'to " 'give

16

defendants "one last clear chance" to respond to allegations of complaints by providing them with "actual" notice of their exact potential liability.' " ' " (*Sakaguchi v. Sakaguchi* (2009) 173 Cal.App.4th 852, 860.) Stone's declaration stated that he did "not dispute that [Backlund] mailed a statement of damages to [his] P.O. Box," but that he had "stopped opening her mail" because he was focused on other things and thus had "never actually received or viewed that statement of damages until years later." A defendant who has appeared with counsel at the outset of litigation and who then formally notifies the court and the opposing party that he is now self-represented must be held responsible for checking the mail at the only address he has given. To hold otherwise would "defy common sense [and] lead to mischief or absurdity." (*Friedman v. City of Beverly Hills* (1996) 47 Cal.App.4th 436, 442; accord, *Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal.4th 554, 567.)

5. **Nonjurisdictional errors are not grounds for relief here**

Stone argues that insufficient evidence supports the general damages awarded in the default judgment. We need not address the merits of this argument because errors of substantive law, such as insufficiency of the evidence and failure to state a cause of action, are nonjurisdictional errors that provide no basis for a collateral attack on a final judgment. (*Armstrong v. Armstrong* (1976) 15 Cal.3d 942, 950; *Aerojet-General Corp. v. American Excess Ins. Co.* (2002) 97 Cal.App.4th 387, 398; *Schwab v. Southern California Gas Co., supra,* 114 Cal.App.4th at p. 1327; *Goldman v. Simpson* (2008) 160 Cal.App.4th 255, 261–262.)

17

### 6. Relief under section 473, subdivision (b)

Stone asserts that the default judgment should be vacated because it resulted from his excusable neglect. The first part of section 473, subdivision (b) (governing discretionary relief) provides that a court "may" relieve a party from a judgment taken against him through his "mistake, inadvertence, surprise, or excusable neglect." Application for this relief "shall be made within a reasonable time, in no case exceeding six months" after the judgment was taken. (§ 473, subd. (b).)

Stone sought relief under section 473, subdivision (b) in the trial court for the first time in his reply, and the court impliedly concluded he was not entitled to relief on this basis, although it did not expressly address it. This was not an abuse of discretion. Stone's request for relief came well after six months had elapsed from the entry of default, which means relief under section 473 was unavailable. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 980; *Aldrich v. San Fernando Valley Lumber Co.* (1985) 170 Cal.App.3d 725, 735, fn. 3 ["[t]he six-month time limit for granting relief under section 473 is jurisdictional"]; *Kokubu v. Sudo* (2022) 76 Cal.App.5th 1074, 1082 [trial court's order will be affirmed if supported by any legal theory].)

## DISPOSITION

The order denying Stone's motion to vacate the renewal of judgment is affirmed.  Backlund is entitled to recover her costs on appeal.

CERTIFIED FOR PUBLICATION.


LUI, P. J.

We concur:



CHAVEZ, J.



GOORVITCH, J.*

---

\* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

19