Filed 8/20/14  Craig v. Saddle Ranch Chop House CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| DEON CRAIG, | B251014 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. EC058553) |
| v. | |
| SADDLE RANCH CHOP HOUSE, LLC, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Samantha P. Jessner and Laura A. Matz, Judges.  Affirmed.

O'Neil & Matusek and Henry John Matusek II, for Plaintiff and Appellant Deon Craig.

Collins Collins Muir + Stewart, Melinda W. Ebelhar and Edward J. Riffle for Defendant and Respondent, Saddle Ranch Chop House, LLC.

_____

Deon Craig appeals the trial court's order granting the motion of Saddle Ranch Chop House, LLC, pursuant to Code of Civil Procedure section 473, subdivision (d),[1] to vacate the default and default judgment entered in favor of Craig, as well as the court's order imposing a $1,000 penalty on Saddle Ranch, payable to Craig or his attorney, pursuant to section 473, subdivision (c)(1)(A), rather than awarding actual attorney fees and costs. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Craig's Personal Injury/Premises Liability Lawsuit*

In a Judicial Council form complaint filed May 25, 2012, Craig alleged he was injured on October 10 or 11, 2010 while a customer at a restaurant in Universal City owned by Saddle Ranch, a limited liability company, when the chair in which he was sitting collapsed.[2] The complaint did not set forth the amount of damages sought.

Prior to filing the lawsuit personnel from the law firm representing Craig checked the California Secretary of State's website and learned Saddle Ranch's agent for service of process was Russ Cashdan, an attorney, with a street and floor address in an office tower in Century City. The summons and complaint were personally served on Cashdan on June 12, 2012 at his law firm in Century City. Saddle Ranch did not respond to the complaint.

### 2. *The Requests for Entry of Default and the Default Judgment*

Craig's counsel filed a request for entry of default on August 10, 2012. The request was served by mail directed to Saddle Ranch (not Cashdan) at the street address for the office tower listed for Cashdan but without his name, the specific floor identified

---

[1]     Statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2]     Saddle Ranch has stated the Universal City restaurant is independently owned and operated by REA 2003-1, LLC, pursuant to a license from Saddle Ranch. According to a declaration from Saddle Ranch's general counsel, the company has no interest in REA 2003-1, LLC.

2

on the Secretary of State's website or the name of his law firm. The default was entered the same day.

While preparing the request for entry of default counsel realized no statement of damages had been served as required by section 425.11. Accordingly, a statement of damages was prepared, reflecting a prayer for general damages (pain and suffering and mental distress) of $1 million and special damages of $50,000 for current estimated medical expenses, $100,000 for future medical expenses and $100,000 for future lost earnings.[3] On August 16, 2012 the process server for Craig's attorney purported to effect substituted service of the statement of damages, together with another copy of the summons and complaint, by leaving them at the front desk of Cashdan's law firm with "Julio Rodriguez," an individual who, according to the process server, "appeared to be the person in charge," followed by mailing a set of the documents to the office address.

On October 3, 2012 Craig filed a "stipulation," signed only by his counsel, to set aside the default entered August 10, 2012 due to the failure to provide an adequate statement of damages. The court granted the request. On October 24, 2012 a new request for entry of default was filed, served again by mail directed to Saddle Ranch at Cashdan's business address without his name, specific floor or the name of his law firm.

A default prove-up hearing was held April 16, 2013 at which Craig testified. On May 1, 2013 the court entered a judgment of $468,670.50 against Saddle Ranch.

Craig's counsel has explained he first learned that Cynthia Gillette, Saddle Ranch's general counsel, had replaced Cashdan as the company's agent for service of process during its research for the collection process immediately following entry of judgment. Craig's memorandum of costs was served on Gillette at her address in Carlsbad, California, as well as mailed to the company's headquarters address, in May 2013.

---

[3] The nature of Craig's alleged injuries from the collapsed chair is not disclosed in the record on appeal.

3. *The Motion To Vacate the Default and Default Judgment*

On June 12, 2013 Saddle Ranch moved for an order vacating the default and default judgment based in part on miscommunications between it and its insurance company concerning the handling of the lawsuit and on the ground it was never served with a proper statement of damages and was unaware that a default and default judgment had been entered until it received the cost memorandum in May 2013.

In her declaration in support of Saddle Ranch's motion, Gillette stated she had received the original summons and complaint from Cashdan on June 13, 2012. Gillette forwarded the documents to Saddle Ranch's insurance broker the same day. Until delivery of a notice of case reassignment in early April 2013—the first case document Saddle Ranch had received since the summons and complaint—Gillette believed the lawsuit was being properly handled by its insurer, Liberty International Underwriters. Gillette also described some confusion whether the incident had occurred at the Saddle Ranch location on the Sunset Strip, which is a restaurant owned by a sister company, or at the location in Universal City, which is independently owned and operated by a licensee of Saddle Ranch. Although now aware the lawsuit was still pending, Gillette did not learn a default had been entered until she was served directly by Craig with the postjudgment memorandum of costs.

Saddle Ranch's motion explained that Cashdan had been replaced by Gillette as its agent for service of process as of June 18, 2012, as reflected in a Statement of Information (Limited Liability Company) filed that date with the Secretary of State. (A copy of the document was provided as an exhibit with Saddle Ranch's reply memorandum in support of its motion.) Accordingly, Saddle Ranch argued the attempted service of the statement of damages was ineffective, and the resulting default and default judgment were void. In addition, Cashdan submitted a declaration asserting no individual named Julio Rodriguez worked at his law firm during 2012 and declaring, "[b]ased on my personal knowledge, I never received any Request for Entry of Default" in the case.

4

4. *Craig's Opposition; the Court's Order Granting the Motion*

Craig opposed the motion, arguing Saddle Ranch had not demonstrated excusable neglect or mistake for failing to answer the complaint (suggesting Saddle Ranch knew its insurer had declined to handle the action) and, in addition, the motion under section 473, subdivision (b), filed more than six months after entry of the default, was untimely. Craig also argued Cashdan's actual authority to receive service of process continued through the date of the substituted service in August 2012 in the absence of any notice from Saddle Ranch that his authority had been revoked.

The trial court granted Saddle Ranch's motion to vacate, citing section 473, subdivision (d), ruling the judgment was void for lack of valid service of a statement of damages. The court rejected Craig's argument Cashdan was Saddle Ranch's ostensible agent, capable of accepting service on its behalf, notwithstanding the filing with the Secretary of State replacing Cashdan with Gillette because there were no facts showing either intentional conduct or want of ordinary care by Saddle Ranch that would have made Craig (or his counsel) believe Cashdan was still its agent as of August 16, 2012. The court also explained, even if Saddle Ranch had actual notice of the statement of damages, under section 425.11 that statement must be actually served before a default may be entered.

The trial court denied Craig's request for an award of attorney fees and costs of $11,259.75 as a condition for vacating the default and default judgment, but imposed a $1,000 penalty to be paid by Saddle Ranch to Craig or Craig's counsel under section 473, subdivision (c)(1)(A).[4]

---

[4]     The court explained, "I think pursuant . . . to CCP section 473(c)(1), whenever a court grants relief from a default, default judgment or dismissal, the court may do any of the following:  (A) impose a penalty of no greater than $1,000 upon—so I believe that under that section I may grant or I may impose a penalty.  You call it sanctions, I call it fee shifting, they call it a penalty . . . and if I go by that section it can't exceed $1,000 anyway."

5

## DISCUSSION

1. *The Trial Court Properly Set Aside the Default and Default Judgment Based on Craig's Failure To Validly Serve the Statement of Damages*

   a. *Standard of review*

Ordinarily, a motion to vacate a default and set aside a default judgment ""is addressed to the sound discretion of the trial court, and in the absence of a clear showing of abuse . . . the exercise of that discretion will not be disturbed on appeal." [Citations.] The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason." (*Strathvale Holdings v. E.B.H.* (2005) 126 Cal.App.4th 1241, 1249.) Whether a default judgment is void due to failure to effectuate valid service of process, however, is a question of law subject to de novo review. (*Trackman v. Kenney* (2010) 187 Cal.App.4th 175, 182; accord, *Sakaguchi v. Sakaguchi* (2009) 173 Cal.App.4th 852, 862 [whether a judgment is void for improper service of statement of damages is a question of law we determine de novo]; see also *Pasadena Medi-Center Associates v. Superior Court* (1973) 9 Cal.3d 773, 779, fn. 6 (*Pasadena Medi-Center*).)

In reviewing the trial court's grant of relief from default, "'It is the policy of the law to favor, whenever possible, a hearing on the merits. Appellate courts are much more disposed to affirm an order when the result is to compel a trial on the merits than when the default judgment is allowed to stand. [Citation.] . . ."'Even in a case where the showing . . . is not strong, or where there is any doubt as to setting aside of a default, such doubt should be resolved in favor of the application.'"'" (*Ramos v. Homeward Residential, Inc.* (2014) 223 Cal.App.4th 1434, 1444, italics omitted; accord, *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 980 ["[b]ecause the law favors disposing of cases on their merits, 'any doubts in applying section 473 must be resolved in favor of the party seeking relief from default"].)

   b. *Rules governing service on a limited liability company's designated agent*

Section 416.10, subdivision (a), authorizes service on a corporation by delivery of a copy of the summons and complaint "[t]o the person designated as an agent for service

6

of process" as provided by various sections of the Corporations Code. (Somewhat more broadly, section 416.10, subdivision (b), permits service on specified officers of a corporation "or a person authorized by the corporation to receive service of process.") Similarly, former section 17061, subdivision (b) (Stats. 1996, ch. 57, § 9, p. 239), part of the now-repealed Beverly-Killea Limited Liability Company Act,[5] provided service upon a limited liability company may be effected by personal delivery of a copy of any process to an individual designated by it as its agent for service of process.

Former section 17057, subdivision (b) (Stats. 1994, ch. 1200, § 27, pp. 7296-7362), required each limited liability company to maintain in California an agent for service of process. Pursuant to former section 17060, subdivision (a)(2) (Stats. 2011, ch. 204, § 13), every limited liability company, within 90 days of filing its original articles of organization and biennially thereafter, had to file a statement with the Secretary of State containing the name and address of that agent for service of process. (Former section 17060, subdivision (a), required the statement to list other information, including the street address of the principal executive office, the mailing address of the limited liability company if different from the street address of its principal executive office and the name and complete business or residence address of any manager and the chief executive officer.) Former section 17060, subdivision (d), authorized the limited liability company to change the designated agent at times other than the filing of the

---

[5]     The Beverly-Killea Limited Liability Company Act was repealed and replaced by the California Revised Uniform Limited Liability Company Act as of January 1, 2014, Corporations Code section 17701.01 et seq. (See Stats. 2012, ch. 419, § 20.) Because the events underlying this appeal occurred in 2012, the former provisions governing limited liability companies control. (See Corp. Code, § 17713.04, subd. (b) ["Except as otherwise specified in this title, this title applies only to the acts or transactions by a limited liability company or by the members or managers of the limited liability company occurring, or contracts entered into by the limited liability company or by the members or managers of the limited liability company, on or after January 1, 2014. The prior law governs all acts or transactions by a limited liability company or by the members or managers of the limited liability company occurring, or contracts entered into by the limited liability company or by the members or managers of the limited liability company, prior to that date."].)

7

biennial statement of information with the Secretary of State: "When changing its agent for service of process or when the address of the agent changes, the limited liability company shall file a current statement containing all the information required by subdivision (a). Whenever any statement is filed pursuant to this section changing the name and address of the agent for service of process, that statement supersedes any previously filed statement pursuant to this section, the statement in the original articles of organization, and the statement in any restated articles of organization that have been filed . . . ."[6] The change in designated agents for service of process is effective upon filing the new statement of information with the Secretary of State. (See former Corp. Code, § 17061, subd. (b) ["[n]o change in the address of the agent for service of process or appointment of a new agent for service of process shall be effective until an amendment to the statement described in Section 17060 is filed"].)

### c. *A statement of damages must be served prior to entry of default and a default judgment*

Section 425.10, subdivision (b), mandates that the complaint in actions for personal injury or wrongful death not state the amount of damages sought. Section 425.11, in turn, authorizes service of a statement of the nature and amount of damages in personal injury and wrongful death actions and provides, before a default may be taken in such an action, the plaintiff must give the defendant notice of the special and general damages sought. (§ 425.11, subd. (c) ["the plaintiff shall serve the statement on the defendant before a default may be taken"]; see *Schwab v. Rondel Homes, Inc.* (1991) 53 Cal.3d 428, 435 ["We cannot allow a default judgment to be entered against defendants without proper notice to them of the amount of damages sought. A defendant is entitled to actual notice of the liability to which he or she may be subjected, a reasonable period of time before default may be entered."].) "'The purpose of

---

[6] Current section 17702.09, subdivision (d), contains substantially identical language, including the provision that "[w]henever any statement is filed pursuant to this section, that statement supersedes any previously filed statement pursuant to this section."

8

section 425.11 is to "'give defendants "one last clear chance" to respond to allegations of complaints by providing them with "actual" notice of their exact potential liability.'"" (*Sakaguchi v. Sakaguchi, supra,* 173 Cal.App.4th at p. 860.) When, as here, a defendant has not appeared in an action, the statement of damages must be served in the same manner as a summons. (§ 425.11, subd. (d)(1); *Sakaguchi*, at p. 860.)

### d. *Service of the statement of damages on Cashdan was not valid*

Even were we to assume Craig's delivery of the statement of damages to an individual at the front desk of Cashdan's office and subsequent mailing of the document to his business address otherwise satisfied the requirements for substituted service, Cashdan was not, in fact, authorized to accept service of process for Saddle Ranch on August 16, 2012. As discussed, Saddle Ranch demonstrated it had changed its designated agent for service of process from Cashdan to Gillette on June 18, 2012 by filing a new statement of information on that date with the Secretary of State. The change was effective upon filing (former Corp. Code, § 17061, subd. (b)) and immediately superseded the previous filing, which named Cashdan and upon which Craig mistakenly relied (Corp. Code, § 17060, subd. (d)). As of the date of delivery of the statement of damages Cashdan was neither a designated agent for service nor one of the limited liability company's 11 officers or managers identified in the statement of information.

Although acknowledging Saddle Ranch's change in its designation of the company's agent for service of process, relying on *Pasadena Medi-Center, supra,* 9 Cal.3d 773 and the language of former section 17060, subdivision (f), Craig contends service on Cashdan on August 16, 2012 was still proper under the doctrine of ostensible authority because neither Saddle Ranch nor Cashdan had notified Craig of Cashdan's change in status. Craig misapprehends both the requirements for recognizing a supposed agent's ostensible or apparent authority to bind a principal and the meaning of former section 17060, subdivision (f).

Ostensible agency is based on principles of estoppel. (*Associated Creditors' Agency v. Davis* (1975) 13 Cal.3d 374, 399.) "An agency is ostensible when the principal

9

intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." (Civ. Code, § 2300; see also Civ. Code, § 2317 ["[o]stensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess"].) "A principal is bound by acts of his agent, under a merely ostensible authority, to those persons only who have in good faith, and without want of ordinary care, incurred a liability or parted with value, upon the faith thereof." (Civ. Code, § 2334.) "'It is elementary that there are three requirements necessary before recovery may be had against a principal for the act of an ostensible agent. The person dealing with the agent must do so with the belief in the agent's authority and this belief must be a reasonable one; such belief must be generated by some act or neglect of the principal sought to be charged; and the third person in relying on the agent's apparent authority must not be guilty of negligence.'" (*Associated Creditors' Agency*, at p. 399.)

These principles were applied to uphold service on an ostensible agent in *Pasadena Medi-Center*, *supra*, 9 Cal.3d 773. In that case the most recent official corporate document (an application for a stock permit) incorrectly identified an individual as a corporate officer (Albert A. Binney, Sr., rather than Albert A. Binney, Jr.). That misidentified individual was served with process on behalf of the corporation. The Supreme Court held the corporation had conferred ostensible authority to accept service of process on Binney, Sr. through its "want of ordinary care." (*Pasadena Medi-Center,* at p. 780.) Although the stock permit application was three years old, the Court also found the plaintiff had reasonably relied upon it because "no more recent document was available." (*Id.* at p. 781.) "Indeed, if defendant corporation had complied with its obligation under Corporations Code section 3301 to file a list of officers and agents authorized to accept service of process, plaintiff would have had no need to rely on the stock permit application." (*Ibid.*; see also *Associated Creditors' Agency v. Davis, supra,* 13 Cal.3d at pp. 402-403 [reasonable to assume agency from displayed license even if license was false].)

10

Here, in contrast, although Saddle Ranch had named Cashdan as its agent for service of process for an earlier period, which included the date on which the original summons and complaint were served, Saddle Ranch did not "intentionally, or by want of ordinary care," cause Craig to believe Cashdan remained its agent for service of process as of August 16, 2012. Saddle Ranch fully complied with the statutory requirements for changing its designated agent for service through its filings with the Secretary of State on June 18, 2012. That is, Saddle Ranch did nothing to create the belief in Cashdan's continued agency relationship to the company nor did it fail to correct some error or misstatement suggesting the agency continued to exist. Accordingly, just as Craig was responsible for determining upon whom the original summons and complaint should be served, it remained his responsibility to confirm the proper identity of Saddle Ranch's agent for service of process when attempting to serve the mandatory statement of damages pursuant to section 425.11, subdivision (d)(1), upon a corporate defendant that had not appeared in the action. (See generally *Burr v. Capital Reserve Corp.* (1969) 71 Cal.2d 983, 996 [no ostensible agency existed as principal did nothing to create a belief in agency]; *Hill v. Citizens Nat. Trust & Sav. Bk.* (1937) 9 Cal.2d 172, 176-177 [no ostensible agency created when appellant relied on a self-proclaimed agent with no action from the principal].)

Craig attempts to avoid the consequences of Saddle Ranch's formal change in designated agent by positing an affirmative duty to inform him of the change, quoting former Corporations Code section 17060, subdivision (f), which provided, "This section [requiring the filing of a statement of information, including the identity of the agent for service of process and list of corporate officers] shall not be construed to place any person dealing with the limited liability company on notice of, or under any duty to inquire about, the existence or content of a statement filed pursuant to this section."[7]

---

[7] Although Corporations Code section 17702.09 of the California Revised Uniform Limited Liability Company Act is substantively identical to former section 17060, requiring a limited liability company to file, and allowing it to revise, a statement of information containing the names and addresses of company officers and managers and

11

According to Craig, this provision means he was entitled to rely on the old information submitted by Saddle Ranch to the Secretary of State, even if superseded by the company's subsequent filings.

Craig misreads the limited protection afforded third parties by former section 17060, subdivision (f). To be sure, that provision means a limited liability company's filing of a statement of information does not provide constructive notice of the statement's contents. Thus, if such a company represented that an individual was an officer or managing agent, a party dealing with that individual would not be charged with knowledge that the filed statement of information did not similarly identify him or her. Reliance on the company's statements or communicative conduct would not be deemed unreasonable based on an inconsistency with the current statement of information. Similarly, if Cashdan, having previously been properly identified as its agent for service of process by Saddle Ranch, had himself indicated in some fashion that he continued to serve in that capacity through August 16, 2012, the company might be estopped to deny his continuing, ostensible authority notwithstanding the change in his status as reflected in the newly filed statement of information. But here, where neither Saddle Ranch nor Cashdan in any way communicated to Craig that Cashdan was, as of August 16, 2012, an agent for service of process, it remained Craig's obligation to determine how the company should be served, just as it was when the lawsuit was initiated and the original summons and complaint were personally delivered. Indeed, any other interpretation of former section 17060, subdivision (f), would render meaningless the provision of former section 17060, subdivision (d), which, as discussed, provided that the filing of a new statement of information immediately superseded any previously filed statement. (See generally *Reno v. Baird* (1998) 18 Cal.4th 640, 658 ["'[c]ourts should give meaning to every word of a statute if possible, and should avoid a construction making any word surplusage'"]; *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 ["a construction making some words surplusage is to be avoided"].)

an agent for service of process, the new section eliminated the language of former section 17060, subdivision (f).

12

Craig's counsel performed this relatively simple investigative task before filing the postjudgment memorandum of costs in May 2013—an exercise that disclosed Gillette was the designated agent for service of process. It was counsel's responsibility to undertake the same minimal inquiry in August 2012 rather than relying without verification on the outdated information obtained several months earlier.

e. *Actual notice does not substitute for proper service of a statement of damages*

In a final attempt to salvage the default judgment rather than litigate his personal injury action on the merits, Craig asserts the judgment should be affirmed because Saddle Ranch never disputed it had actual knowledge of the statement of damages prior to entry of the default.[8] However, as Saddle Ranch argues, and the trial court ruled, actual notice does not excuse the requirement for proper service of the statement of damages under section 425.11, subdivision (c). (See *Summers v. McClanahan* (2006) 140 Cal.App.4th 403, 414 ["no California appellate court has gone so far as to uphold a service of process solely on the ground the defendant received actual notice when there has been a complete failure to comply with the statutory requirements for service"].) "Our state appellate courts have long held that due process requires *formal notice* of the defendant's potential liability, by service in the same manner as a summons." (*Schwab v. Southern California Gas Co.* (2004) 114 Cal.App.4th 1308, 1321.)

In sum, the trial court properly set aside the default and default judgment against Saddle Ranch based on Craig's failure to validly serve a statement of damages on the company through its designated agent for service of process as required by section 425.11. Neither the doctrine of ostensible authority nor Saddle Ranch's purported

---

[8] Saddle Ranch has always maintained actual knowledge of the statement of damages was not material; regardless, Craig was obligated to properly serve the statement of damages before a default could be entered. Nonetheless, in its respondent's brief Saddle Ranch argues nothing in the record suggests it in fact had actual notice of the statement of damages prior to entry of default.

13

actual knowledge of the statement of damages is sufficient under the circumstances here to reinstate the vacated default judgment.[9]

### 3. *Craig Has Forfeited His Request for Additional Fees and Costs*

Although insisting the court should deny the motion, in their opposition papers in the trial court Craig's counsel urged, "should the inconceivable happen," any order granting the motion should be conditioned on reimbursement of all fees and costs, totaling $11,259.75. Counsel cited section 473, without specific subdivision, as the basis for the request. At the hearing on Saddle Ranch's motion, when asked what authority supported the award of fees and costs, counsel for Craig quoted language from section 473, subdivision (b), authorizing the court to impose "any terms as may be just" when relieving a party from a judgment taken against it through its mistake, inadvertence, surprise or excusable neglect. As discussed, rather than award the full amount sought by Craig, the court imposed a $1,000 penalty to be paid by Saddle Ranch to Craig or Craig's counsel under section 473, subdivision (c)(1)(A).

In his opening brief Craig contends the trial court misunderstood its discretion under section 473, subdivision (b), to award fees and costs as a condition of vacating the default. The cited language, however, applies only to discretionary relief granted pursuant to that subdivision, not an order setting aside a void judgment under section 473, subdivision (d), as occurred in this case. Section 473, subdivision (c), in contrast—the provision utilized by the trial court—applies to any form of relief under section 473. (See § 473, subd. (c)(1) ["[w]henever the court grants relief from a default, default judgment, or dismissal based on any of this provisions of the section, the court may do any of the following . . ."].)

For the first time in his reply brief Craig asserts the trial court had discretion to grant the full amount of fees and costs requested under section 473, subdivision (c)(1)(C),

---

[9] In light of our affirmance of the trial court's ruling under section 473, subdivision (d), we do not consider whether relief would also have been appropriate under section 473, subdivision (b), based upon Saddle Ranch's mistake, inadvertence, surprise or excusable neglect.

which authorizes the trial court, in addition to imposition of a penalty no greater than $1,000, to "[g]rant other relief as is appropriate." This belated argument comes far too late. (*Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11 ["[o]bvious reasons of fairness militate against consideration of an issue raised initially in the reply brief of an appellant"]; see *Locke v. Warner Bros., Inc*. (1997) 57 Cal.App.4th 354, 368; see also *Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603 [issues not raised in the trial court cannot be raised for the first time on appeal]; *Dietz v. Meisenheimer & Herron* (2009) 177 Cal.App.4th 771, 799-800 [appellant asserting error must have raised the issue in the trial court and given the trial court an opportunity to correct the error].) The issue has been forfeited.

## DISPOSITION

The order is affirmed. Saddle Ranch is to recover its costs on appeal.


PERLUSS, P. J.

We concur:


WOODS, J.


SEGAL, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15