[No. A085955. First Dist., Div. Three. Dec. 9, 1999.]

ROBERT M. CASSEL, Plaintiff and Appellant, v.
SULLIVAN, ROCHE & JOHNSON, Defendant and Appellant.

**COUNSEL**

Law Offices of Joel D. Adler, Joel D. Adler and Roger T. Ritter for Plaintiff and Appellant.

McQuaid, Metzler, Bedford & van Zandt and Neil R. Bardack for Defendant and Appellant.

**OPINION**

**WALKER, J.**—In this procedurally involved case, Robert M. Cassel twice obtained judgment in the amount of $305,690 plus interest and attorney fees in his action for an accounting, valuation and payment of his interest in the Sullivan, Roche & Johnson partnership from which he withdrew in September 1994. Cassel first secured judgment by obtaining an entry of default against Sullivan, Roche & Johnson (the partnership), then by proving up his damages and obtaining a default judgment on April 14, 1998. This default

judgment (but not the default itself) was thereafter set aside because Cassel had not served a statement of damages on the partnership. A second "prove-up" hearing was held, in which the partnership fully participated by presenting its own witnesses and evidence, and cross-examining Cassel's witnesses. This hearing resulted in the November 12, 1998, entry of a second judgment against the partnership for $305,690, the same principal amount as the original vacated default judgment.

The partnership appeals, claiming that the default entered against it, from which both judgments ultimately flowed, was void for failure to serve a statement of damages and should have been vacated by the court. Cassel cross-appeals, contending the trial court's order setting aside the first default judgment entered after a prove-up hearing was erroneous, because in this action to determine a former partner's partnership interest, no statement of damages was required.

We hold that the default entered against the partnership, followed by the first prove-up hearing and the April 14, 1998, default judgment were entirely proper without the necessity of service of a statement of damages on the defaulting defendant. Thus, the trial court erred in setting aside the first default judgment. We sustain Cassel's cross-appeal by reversing the trial court's order setting aside the first default judgment. Because that judgment should have remained effective and is now reinstated, we direct that the second judgment be vacated.

*Facts and Procedural History*

In April 1990 Cassel joined the Sullivan, Roche & Johnson law partnership. The terms of the partnership were set forth in a document entitled "General Partnership Agreement," which was a comprehensive document containing the partners' agreements with respect to the general partnership, including the precise manner in which a withdrawing partner's financial interest in the partnership would be calculated and paid. Cassel withdrew from the partnership in September 1994. In July 1996 he filed an action against several of his former partners[1] and the partnership itself for an accounting and valuation of his interest in the partnership on the date of his withdrawal, and for judgment against the partnership for the full value of that interest. In his action Cassel alleged that he had made requests of his former partners for an accounting and settlement of his interest, but that they had refused to comply. He further alleged that the defendants were in possession of the essential account books and other financial information

---

[1]Cassel eventually dismissed all of his former partners, with the exception of Clayton R. Jackson, who was serving a sentence in federal prison.

needed to ascertain the value of his interest in the partnership. The complaint asked for a specific monetary award.

The partnership did not respond to the complaint, and Cassel obtained the entry of its default on January 28, 1997. There followed a default judgment prove-up hearing before a temporary judge, who determined that the value of Cassel's interest in the partnership on the date of his withdrawal was $305,690. She awarded him this amount, plus $5,000 in attorney fees and interest from the time of his withdrawal from the partnership. Thereafter, the partnership moved to set aside the default judgment. Judge David Garcia granted the motion on the ground that, under the case of *Ely* v. *Gray* (1990) 224 Cal.App.3d 1257 [274 Cal.Rptr. 536], Cassel had been required to serve a statement of damages on the partnership before obtaining a default judgment against it. Subsequently, Cassel's former partner, Theodore Kolb, filed a motion to set aside the default itself and not just the judgment which had already been set aside, claiming that the default was void for failure to serve a statement of damages. This motion was denied.

In compliance with Judge Garcia's ruling, Cassel served a statement of damages on his former partners and on the partnership, claiming $305,690 in damages, plus interest and attorney fees. He also gave them notice of a default prove-up hearing to be held on September 17, 1998. Kolb objected to the matter being heard before a temporary judge, and the matter was eventually continued to October 6, 1998, before Judge Ollie Marie-Victoire, with appearances by the partnership and Cassel. Notwithstanding that the hearing before Judge Marie-Victoire was noticed as a default prove-up hearing, both sides were permitted to present and cross-examine percipient and expert witnesses and to offer and object to evidence relevant to the subject of Cassel's partnership interest. At the conclusion of the full-day trial, the court took the matter under submission. Both sides submitted proposed statements of decision to the court, and on November 12, 1998, judgment in Cassel's favor was granted in the same amount as the original default judgment, $305,690, plus interest and attorney fees in an amount to be determined. The partnership's subsequent motion for new trial was denied. After a hearing to set attorney fees, Cassel was awarded $95,000.

*Discussion*

The partnership appeals the November 12, 1998, judgment, the denial of its new trial motion and the order fixing attorney fees. Cassel cross-appeals the trial court's order setting aside the original default judgment. We find merit in Cassel's cross-appeal and hold that the original default judgment should not have been set aside. We will direct the trial court to reinstate the

vacated April 1998 default judgment, and to vacate the second judgment of November 12, 1998. Accordingly, we do not address the arguments made by the partnership on appeal pertaining to the second judgment.

### Cassel's Cross-appeal

In *Ely* v. *Gray, supra,* 224 Cal.App.3d 1257, the Third District set aside a default money judgment in favor of a plaintiff whose complaint had sought dissolution and an accounting for two partnerships he had formed with the defendant. Neither the body of the complaint nor the prayer specified a sum which the plaintiff claimed he was owed. Nonetheless, after the defendant failed to answer, Ely obtained his default, presented evidence at a default prove-up hearing, and obtained a nearly $45,000 judgment. In reversing the portion of the default judgment awarding plaintiff damages, the court held that the amount was in excess of the trial court's jurisdiction, because the defendant had been given no notice of the amount for which he could be liable upon his default. Recognizing the "conundrum" faced by a plaintiff seeking an accounting, which by its equitable nature cannot be reduced to a "sum certain" in a complaint's allegations, the court devised what it viewed as a reasonable solution: service on the defendant of a postcomplaint, predefault statement of damages, similar to that required by Code of Civil Procedure[2] section 425.11 in personal injury and wrongful death actions. (*Ely* v. *Gray, supra,* 224 Cal.App.3d at p. 1263.) Thus, *Ely* v. *Gray* enunciated the rule that a plaintiff in an accounting action must give the defendant notice of the amount he seeks prior to the entry of the defendant's default. It was this rule that the trial court relied upon in setting aside Cassel's April 1998 default judgment against the partnership.

Cassel maintains that *Ely* v. *Gray* is no longer viable in light of the later Supreme Court decision of *In re Marriage of Lippel* (1990) 51 Cal.3d 1160 [276 Cal.Rptr. 290, 801 P.2d 1041, 5 A.L.R.5th 1156] (*Lippel*). In *Lippel,* the Supreme Court ordered that a child support order be vacated, because the husband had never been given notice of the fact that the wife was asking for such support. The crucial factor in *Lippel* was not that no *amount* of support had been requested in the wife's dissolution petition, but that she had not marked the box indicating that she was seeking child support as a *form of relief.* This omission, the court held, deprived the husband of the notice to which he was entitled under section 580, which provides that relief granted a plaintiff on default " 'cannot exceed that which he shall have demanded in his complaint.' " (51 Cal.3d at p. 1166.) After a review of those cases in which it had previously considered the application of section 580, the court reiterated its position: "section 580 is to be interpreted, in accordance with

---

[2]Unless otherwise specified, all statutory references are to the Code of Civil Procedure.

its plain language, to deprive a trial court of jurisdiction to enter a judgment against a defaulting defendant which awards greater relief than that sought in the plaintiff's complaint." (51 Cal.3d at p. 1167.) The wife's failure to check the box indicating that she was requesting child support failed to put the husband on notice of the claims to be litigated against him, and deprived him of his due process rights. (*Ibid.*)

Following the reasoning in *Lippel*, the court in *In re Marriage of Andresen* (1994) 28 Cal.App.4th 873 [34 Cal.Rptr.2d 147] (*Andresen*) allowed a default and default judgment to stand against the defaulting husband in a marital dissolution action. The judgment provided for an in-kind division of the parties' community assets and liabilities and ordered the husband to make an equalizing payment. The husband contended that the dissolution petition failed to give him adequate notice of the "specific kind and amount of relief" the wife ultimately obtained on default, because it did not set forth a monetary value for the property the wife sought to have divided, did not identify certain community assets and failed to request an equalizing payment from him. (*Id.* at p. 877.) The court held that by checking the appropriate boxes on the standard form dissolution petition and attaching a property declaration listing marital assets and liabilities, the wife had adequately given notice that she was requesting the parties' property rights be determined. (*Id.* at p. 879.) It found that under *Lippel* no greater specificity was required, and there was no need to include the amount of relief requested, as contrasted with the type of relief requested. (*Ibid.*) The husband was on notice that the wife sought a division of the property and liabilities identified in the papers. "If he desired to be heard on the subject of the valuation and division of the listed items, he should have appeared." (*Id.* at pp. 879-880, fn. omitted.)

The court in *Andresen* reasoned that when a petitioner asks that the parties' rights as to specified property be determined, the respondent is necessarily put on notice that the court will undertake to assess and divide the property. A respondent who is willing to rely on the court's valuation need not appear in the action. If, on the other hand, the respondent is concerned about how the court will value the property, he or she must file an answer to preserve the right to appear and present evidence and argument on the matter. (*Andresen, supra,* 28 Cal.App.4th at p. 880.)

The outcome presaged by *Lippel* and decided by *Andresen* makes sense in the marital dissolution arena, where the parties are both aware of the property subject to division, the responding party knows that the petitioner seeks a division of that property, and the court is statutorily bound to value and divide the community property equally. (Fam. Code, § 2550.) In shortthe respondent in a dissolution action who chooses to default does so with

the expectation that he or she will encounter no big surprises in the default judgment, which will reflect the theretofore unspecified, but reasonably calculable, amount of relief.

In contrast to this straightforward property division scenario is the personal injury or wrongful death action, where the plaintiff is precluded by law from stating a specific monetary demand for damages in the complaint, but is required to serve a statement of damages on the defendant prior to obtaining an entry of default. (§§ 425.10 and 425.11.) In a personal injury action, where the damages are completely within the plaintiff's knowledge, a defendant who has no prior notice of the damages sought will be deprived of his or her due process rights, and will be unable to reasonably assess the amount he or she will be liable for by defaulting.

In the matter before us, the partnership was in possession of the partnership agreement, which set out the following specific method for calculating a withdrawing partner's interest: "(a) the partner's income account plus, (b) the partner's capital account, and (c) any Partnership indebtedness to him or her, reduced by any indebtedness of the partner to the Partnership, is a credit balance, that balance shall be a debt owed to the withdrawing or expelled partner by the Partnership, and it shall be paid to him or her, within six (6) months from the Determination Date, with interest thereon at the Agreed Rate from the Determination Date to the date paid." Cassel's complaint advised the partnership that he sought a determination by the court of his financial interest in the partnership and a judgment for that amount. As with the respondent in a dissolution seeking the division of marital property, the remaining partners were in possession of information at least equal to (and according to Cassel's complaint, greater than) that possessed by Cassel regarding the partnership's financial status from which Cassel's interest would be calculated. Thus, armed with the partnership's financial information and the partnership agreement, the respondent could precisely calculate the amount for which it could be liable if it chose to default. As could be expected, the amount of Cassel's judgment, both the first and the second time, was taken directly from the partnership's financial statement for the six-month period ending just prior to Cassel's withdrawal from the partnership. This statement calculated Cassel's equity balance ending June 30, 1994, at $305,690.

Notwithstanding the holdings in *Lippel* and *Andresen*, the trial court felt bound to follow *Ely* v. *Gray*. We are not so bound. (See *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937].) We hold that in an action seeking to account for and value a former partner's partnership interest and for payment of that interest, the complaint

need only specify the type of relief requested, and not the specific dollar amount sought. We foresee no danger that defaulting defendants will be taken by surprise by judgments entered against them, because, like spouses facing property division, they will be in possession of the essential information necessary to calculate their potential exposure. Of course, if they seek to be heard on the method of calculating the withdrawing partner's financial interest, or on the figures used in arriving at the value of the interest, they are free to appear in the action. Thus, we reverse the trial court's order vacating the original April 1998 default judgment against the partnership.[3]

### Attorney Fees

In a classic case of wanting to eat his cake and have it too, Cassel asks us to reverse the trial court's order vacating the April 1998 default judgment, which we will do, but to affirm that portion of the second November 1998 judgment that awarded him $95,000 in attorney fees. We are aware of no authority which allows us to reinstate the first default judgment, but not the attorney fees awarded under that judgment, then vacate the second judgment, but not the attorney fees awarded under that judgment. We decline Cassel's invitation.

### Conclusion and Disposition

We hold that under the circumstances presented here, *Ely* v. *Gray* is not analytically sound in light of *Lippel* and *Andresen*. Cassel was not obligated to include a monetary amount in his complaint or to serve a statement of damages on the partnership prior to obtaining the entry of a default and default judgment against it. It was therefore error to vacate the default judgment obtained against respondent in April 1998. We remand with directions that the trial court vacate the superfluous November 1998 judgment and reinstate the April 1998 default judgment, including the award of attorney fees and interest contained therein. Respondent and cross-appellant Cassel shall recover his costs on appeal.

McGuiness, P. J., and Corrigan, J., concurred.

---

[3]The partnership contends that the trial court erred in entering judgment against it because it was not a proper party to the action. In making this argument it fails to acknowledge that the partnership agreement itself provides that the balance of a withdrawing partner's interest "shall be a debt owed to the withdrawing . . . partner by the Partnership."