Filed 4/4/19 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| DEBORAH SASS, | B283122 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC554035) |
| v. | ORDER MODIFYING OPINION AND DENYING REHEARING |
| THEODORE COHEN, | |
| Defendant and Appellant. | NO CHANGE IN JUDGMENT |


THE COURT:

It is ordered that the opinion filed herein on March 7, 2019, be modified as follows:

1. At the bottom of page 19 to the top of page 20 where it reads:

As her share of the Oakley house, plaintiff demanded *either* $2,850,000 (that is, the $3,000,000

representing her share in both houses less the $150,000 as her share of the proceeds from the Hollywood house) in damages *or* a constructive trust.

Replace as follows:

As her share of the Oakley house, plaintiff demanded *either* $2,850,000 (that is, the $3,000,000 representing her share in both houses less the $150,000 as her share of the "fair market value of . . . the Hollywood [h]ouse received by . . . Cohen when he sold that house") in damages *or* a constructive trust.

There is no change in the judgment.

Respondent's petition for rehearing is denied.

_____
LUI, P. J.,     ASHMANN-GERST, J.,     HOFFSTADT, J.

2

Filed 3/7/19 (unmodified version)

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| DEBORAH SASS, | B283122 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC554035) |
| v. | |
| THEODORE COHEN, | |
| Defendant and Appellant. | |

      APPEAL from a judgment of the Superior Court of Los Angeles County.  Frederick C. Shaller, Judge.  Vacated and remanded with instructions.

      Law Offices of Robert S. Gerstein and Robert S. Gerstein for Plaintiff and Respondent.

      Law Offices of James P. Wohl, James P. Wohl, and Eileen P. Darroll for Plaintiff and Respondent.

      Snell & Wilmer, LLP, Keith M. Gregory, and Todd E. Lundell for Defendant and Appellant.

\* \* \* \* \* \*

When a plaintiff files a lawsuit, the defendant can opt not to respond; the result is a default judgment for the plaintiff. (Code Civ. Proc., §§ 580, subd. (a), 585, subds. (a) & (b).)[1] However, the relief awarded in such a default judgment "cannot exceed" the "type and amount of relief" sought in the plaintiff's operative pleadings. (§ 580, subd. (a); *Becker v. S.P.V. Construction Co.* (1980) 27 Cal.3d 489, 493-494 (*Becker*).) This case presents two unsettled questions: (1) May a default judgment be entered for an amount in excess of the demand in the operative pleadings when the plaintiff seeks an accounting or valuation of a business; and (2) Should the comparison of whether a default judgment exceeds the amount of compensatory damages demanded in the operative pleadings examine the *aggregate* amount of non-duplicative damages or instead proceed on a claim-by-claim or item-by-item basis? We hold that actions alleging an accounting claim or otherwise involving the valuation of assets are not excused from limitations on default judgments and, in so doing, add our voice to the growing chorus of cases so holding. We also hold that the amounts of damages awarded and demanded are to be compared on an aggregate basis.

Applying these principles, the default judgment awarding compensatory damages of $2,806,532 in this case exceeds the $987,500 in compensatory damages specified in the operative complaint. It is void to the extent of the overage, and we remand to the trial court to determine whether to give the plaintiff the option to accept a modified default judgment in this reduced amount or to amend her complaint to demand greater relief

---

1      All further statutory references are to the Civil Procedure Code unless otherwise indicated.

2

(thereby giving the defendant an opportunity to avoid a default by responding to her amended pleading).

## FACTS AND PROCEDURAL BACKGROUND

### I.     Facts

In May 2006, Theodore Cohen (Cohen) met Deborah Sass (plaintiff) in London.  Cohen was married, but he and plaintiff began dating.

The next month, Cohen asked plaintiff to move to the United States with him so they could "merge their lives."  In exchange, Cohen promised that "all property and income acquired . . . during [their] relationship would be joint property" and that he would financially take care of her for the rest of her life.  Cohen reaffirmed these promises in April 2011.  Plaintiff accepted Cohen's offer and moved in with him.

Cohen thereafter bought two houses.  In late 2007, Cohen bought a condominium on Hollywood Boulevard in Los Angeles (the Hollywood house), telling plaintiff they would co-own the property.  And in the summer of 2011, Cohen bought a house on Oakley Drive in Los Angeles (the Oakley house), and again said he and plaintiff would be co-owners.

Cohen also brought plaintiff into his business dealings.  In 2006, Cohen formed a "digital entertainment consulting company" called Tag Strategic, LLC (Tag).  Cohen was Tag's sole member.  Cohen told plaintiff he wanted her to help him build Tag's business and promised to give her equity in the company.  Toward that end, Cohen initially named her as Tag's Vice President of Client Relations and later named her its Global Head of Business Development.  After plaintiff worked for Tag for several years for no salary at all, Cohen in January 2009 promised to pay her a "token" salary of $5,000 per month.  He

3

ended up paying her $2,000 per month for a total of 10 months, even though she was working 70 hours a week for the company.

In June 2011, plaintiff bought stock in a restaurant and lounge, but put it in Cohen's name.

In December 2012, plaintiff moved out of the Oakley house where she and Cohen were living. In April 2013, Cohen stopped paying plaintiff's living expenses and plaintiff stopped working for Tag.

In October 2013, Cohen sold the Hollywood house but did not share any of the sale proceeds with plaintiff.

## II. Procedural Background

### A. *The operative complaint*

In August 2014, plaintiff sued Cohen and Tag.

In the operative, Second Amended Complaint (SAC), plaintiff alleged seven claims: (1) breach of contract against Cohen, for breaching their so-called *Marvin* agreement[2] to share the title on both houses, the sale proceeds from the Hollywood house, Tag's profits, and Cohen's income; (2) fraud against Cohen and Tag for Cohen's misrepresentations that he would put plaintiff's name on the deeds to both houses and that she would earn equity in Tag; (3) failure to pay plaintiff's wages between May 2006 and April 2013 against Tag; (4) waiting time penalties under Labor Code section 203 for nonpayment of those wages against Tag; (5) quantum meruit against Cohen and Tag for the value of plaintiff's services to Tag; (6) an accounting of the value

---

[2] A *Marvin* agreement is a contract made by a romantically involved but unmarried couple to pool their earnings, share property acquired, and provide one another support during the term of their relationship or thereafter. (*Marvin v. Marvin* (1976) 18 Cal.3d 660, 674-675, 684.)

4

of the two homes, Tag, Cohen's income, and the restaurant/lounge stock against Cohen and Tag; and (7) a violation of the Uniform Fraudulent Transfer Act[3] (Civ. Code, § 3439 et seq.) against Cohen and Tag, for shuttering Tag after the breakup to frustrate the collection of any judgment.[4]

Plaintiff's prayer for relief for each of these claims in the SAC sought damages "in a sum to be proven at trial." However, plaintiff elsewhere in the SAC demanded (1) her "share of profits" in the Hollywood home, which she alleged was "in excess of $300,000," (2) "no less than $3,000,000, which represents 50% of the fair market value of (a) the Hollywood [h]ouse received by . . . Cohen when he sold that house . . . and (b) the Oakley [h]ouse," (3) "at least the sum of $700,000, which represents 50% of the revenue brought to Tag by [p]laintiff, along with an unknown sum which represents 50% of all profits earned by Tag," (4) unpaid wages from May 2006 to April 2013 less the "10 payments of $2,000," and (5) $25,000 for the stock in the restaurant/lounge. In the alternative, plaintiff demanded a constructive trust over "all income and property earned and purchased by [Tag and Cohen] since May 2006." On the fraud claim, plaintiff also sought "punitive and exemplary damages in a sum to be determined at trial."

---

[3] This statutory scheme was amended after plaintiff filed the SAC, and is now referred to as the Uniform Voidable Transactions Act. (Stats. 2015, ch. 44, § 3 (Sen. Bill No. 161 (2015-2016 Reg. Sess.), eff. Jan. 1, 2016).)

[4] Plaintiff had previously alleged a claim for breach of fiduciary duty against Cohen, but deleted that claim in the SAC.

**B.** *Default, prove up and entry of default judgment*

Neither Cohen nor Tag responded to the SAC, despite the trial court advising Cohen at a hearing on a discovery matter that his response was past due.

In February 2016, plaintiff filed and served on Cohen a Notice of Punitive Damages in which she "reserve[d] the right to seek $4,000,000 in punitive damages."

On March 10, 2016, the trial court's clerk entered default as to Cohen and Tag on the SAC.

On October 4, 2016, the trial court conducted a "prove up" hearing for plaintiff to substantiate her damages.[5] Plaintiff submitted the declaration of a forensic accountant who determined that plaintiff's share of the total value of the two houses, Tag, Tag's profits, her unpaid wages, and the restaurant/lounge stock came to $6,351,000.

The trial court issued a tentative ruling awarding plaintiff actual damages of $2,806,532, prejudgment interest of $43,547.70, and punitive damages of $88,984. Based chiefly on plaintiff's expert's calculations, the trial court calculated the actual damages as follows: (1) $126,504, which is one half of the $253,008.87 in proceeds from the sale of the Hollywood house; (2) $2,099,610, which is one half of the $4,199,219 ongoing value of Tag; (3) $444,918, which is one half of Tag's bank account balances on January 4, 2013 (which the trial court used as the proxy for Tag's profits); (4) $120,000 in unpaid salary, which is either one half of the promised monthly salary of $5,000 for 52 months (from January 2009 when that salary was promised to

---

[5] Cohen telephonically appeared at the hearing and asked that it be continued; the trial court denied his request.

April 2013 when plaintiff stopped working for Tag) or the full amount of the promised salary for 28 months (from January 2011 through April 2013), less the $20,000 actually paid; (5) $5,000 in waiting time penalties, and (6) $10,500, which is one half of the $21,000 purchase price of the restaurant/lounge stock. Rather than award damages for the Oakley house still owned by Cohen, the court imposed a constructive trust and ordered Cohen to add plaintiff to the deed as half owner as a tenant in common. The court then awarded prejudgment interest at the statutory rate of 10 percent (Civ. Code, §§ 3287, subd. (a), 3289, subd. (b)) in the amounts of (1) $37,951.20 for the sale proceeds from the Hollywood house (from its sale date of October 2013 through October 2016), and (2) $5,596.50 for the purchase price of the stock (from its purchase in June 2011 through October 2016). The court awarded punitive damages of $88,984, which is one-tenth of the total amount the court used as the proxy for Tag's profit.[6]

On October 7, 2016, the trial court entered a default judgment against Cohen and Tag awarding plaintiff the above described relief.

### C. *Cohen's motion to vacate*

On January 25, 2017, Cohen filed a motion to vacate the default judgment.[7] In his reply brief in support of the motion,

---

[6] The court also awarded plaintiff costs of $2,569.04.

[7] Tag also purported to join in the motion, but the trial court declined to consider the motion as to Tag because its corporate status was suspended. Cohen does not challenge that ruling on appeal.

7

Cohen argued that the default judgment was void because the relief granted exceeded that demanded in the SAC.[8] After granting plaintiff the opportunity to respond to this argument, the court issued a written ruling denying the motion to vacate. Based on *Cassel v. Sullivan, Roche & Johnson* (1999) 76 Cal.App.4th 1157 (*Cassel*), the court ruled that "there is no notice requirement for damages sought before entry of default judgment" "where a plaintiff alleges a cause of action for accounting and knowledge of the debt due is within the possession of the defendant." In the court's view, *Cassel* excused plaintiff's obligation to plead a specific amount of damages because her lawsuit effectively sought an accounting of Cohen's and Tag's assets and income, and because Cohen and Tag had greater knowledge regarding that valuation than plaintiff.

### D. *Appeal*

Cohen filed a timely notice of appeal.

## DISCUSSION

Cohen argues that the trial court erred in denying his motion to vacate because *Cassel* was wrongly decided and, absent *Cassel*'s exception, the default judgment is void because it awards

---

[8] In his initial motion, Cohen sought relief on the grounds that (1) plaintiff had never served him with a statement of damages under section 425.11, (2) his default was the product of excusable neglect under section 473, subdivision (b), and (3) the answer he filed to plaintiff's First Amended Complaint precluded the entry of default on the SAC. The trial court rejected these arguments, and Cohen does not renew them on appeal.

8

relief in excess of that demanded in plaintiff's SAC.**9**  Cohen's argument therefore presents two questions: (1) Is *Cassel* good law, and, if not, (2) does the default judgment exceed the amount demanded in the SAC, which in this case requires us to decide whether the comparison of the amount awarded in a default judgment and the amount demanded in the operative pleadings is to be determined by looking at the relief demanded *as a whole* or instead on an item-by-item basis?  We independently examine each of these legal questions as well as the denial of the motion to vacate.  (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 801 [questions of law]; *Airs Aromatics, LLC v. CBL Data Recovery Technologies, Inc.* (2018) 23 Cal.App.5th 1013, 1018 [denial of motion to vacate].)

## I.    The Law of Default Judgments, Generally

When a defendant does not respond to a plaintiff's properly served complaint, the plaintiff may seek the entry of default and, thereafter, a default judgment.  (§ 585, subds. (a) & (b).)  The "relief granted" in the default judgment "cannot exceed" what the plaintiff "demanded in the [operative] complaint."  (§ 580, subd. (a).)  Under these statutes, the operative complaint fixes "a

---

**9**    Plaintiff moved to dismiss Cohen's appeal in its entirety, and Cohen filed a motion asking us to sanction plaintiff for filing two motions to dismiss this appeal.  We deny both sets of motions.  Disentitlement is reserved for those rare cases in which the equities make it appropriate to dismiss an appeal because the appellant has refused to comply with a trial court's order (*In re Marriage of Hofer* (2012) 208 Cal.App.4th 454, 459); on the record before us, this standard is not met.  Although we deny both of plaintiff's motions to dismiss, their filing does not in our view rise to the level of sanctionable conduct.

ceiling on recovery," both in terms of the (1) type of relief and (2) the amount of relief. (*Greenup v. Rodman* (1986) 42 Cal.3d 822, 824 (*Greenup*); *Becker*, *supra*, 27 Cal.3d at pp. 493-494; *Burtnett v. King* (1949) 33 Cal.2d 805, 810-811 (*Burtnett*); *In re Marriage of Lippel* (1990) 51 Cal.3d 1160, 1167 (*Lippel*).) For these purposes, the operative complaint must allege the amount of "relief" sought for *damages*, but not prejudgment interest, attorney fees, or costs. (E.g., *Simke, Chodos, Silberfeld & Anteau, Inc. v. Anthans* (2011) 195 Cal.App.4th 1275, 1287-1288, 1290 [attorney fees and costs]; *Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1209 (*Hearn*) [prejudgment interest]; cf. *Becker*, at p. 495 [attorney fees must be a type of relief sought in operative complaint].)

These back-end limitations on the relief that may be awarded in a default judgment enforce the front-end statutory requirements for pleading. A complaint must set forth both (1) "[a] demand . . . for the relief" sought and (2) "the amount" of any "money or damages" sought. (§ 425.10, subd. (a).) There are only three instances in which a plaintiff is statutorily prohibited from pleading the amount of relief in her complaint: (1) when the plaintiff is seeking damages for "personal injury or wrongful death" (§ 425.10, subd. (b)); (2) when the plaintiff is seeking punitive damages (*ibid.*); and (3) when the plaintiff is required to use statutorily mandated forms in a marital dissolution action that do not permit a party to plead an *amount* of relief (Fam. Code, §§ 2331 [form complaint], 2104 [preliminary property disclosure], 2105 [final property disclosure]). In the first two instances, the amount of relief sought in a default judgment is capped at the amount the plaintiff sets forth in a supplemental pleading that she is statutorily authorized—and, before a default

10

may be sought, statutorily required—to serve.[10] (§§ 425.11, 425.115, 585.) In the third instance, the amount of relief sought in a default judgment has no cap, at least for those types of relief for which the statutorily mandated form does not allow an amount to be pled. (*Lippel*, *supra*, 51 Cal.3d at pp. 1169-1170 [form complaint]; *In re Marriage of Andresen* (1994) 28 Cal.App.4th 873, 879 [same]; *In re Marriage of Eustice* (2015) 242 Cal.App.4th 1291, 1304-1307 [preliminary declarations]; cf. *In re Marriage of Kahn* (2013) 215 Cal.App.4th 1113, 1116-1119 [when checking "Other" box on form complaint, amount of relief sought *can* be alleged and thus *must* be alleged].)

Limiting the back-end relief on default to the relief that is pled at the front-end is not only required by statute; it is also compelled by due process. (*Lippel*, *supra*, 51 Cal.3d at p. 1166.) Due process demands "notice of [a pending case] and [an] opportunity to meet it." (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 212.) If and only if a defendant receives advance notice of the type and amount of relief sought can he make a "fair and informed" decision whether to fight the pending case (and, in so doing, risk

_____

**10** The courts are divided over whether a supplemental filing setting forth the amount of damages sought satisfies notice for purposes of section 580 where no statute authorizes such a filing, such as in cases not involving personal injury or wrongful death. (Compare *Airs Aromatics*, *supra*, 23 Cal.App.5th at pp. 1019-1020 [supplemental filings limited to types of cases listed in statute]; *Electronic Funds Solutions, LLC v. Murphy* (2005) 134 Cal.App.4th 1161, 1176 [same] with *Los Defensores, Inc. v. Gomez* (2014) 223 Cal.App.4th 377, 401-402 [allowing supplemental filing "akin to" statutorily authorized notice in an accounting case].)

11

the possibility of a judgment exceeding that relief) or to forego that fight (and, in so doing, accept a judgment against him up to, but not exceeding, that relief in an amount fixed by the trial court). (*Lippel*, at p. 1166; *Greenup*, *supra*, 42 Cal.3d at pp. 826, 829; *Eustice*, *supra*, 242 Cal.App.4th at p. 1304; *Jones v. Interstate Recovery Service* (1984) 160 Cal.App.3d 925, 928; *Andresen*, *supra*, 28 Cal.App.4th at p. 880.)[11]

The notice required both by statute and by due process is *formal* notice. (*Greenup*, *supra*, 42 Cal.3d at p. 826; *Schwab v. Southern California Gas Co.* (2004) 114 Cal.App.4th 1308, 1324 (*Schwab*).) Neither actual notice nor constructive notice matters. (*Greenup*, at p. 826; *Airs Aromatics*, *supra*, 23 Cal.App.5th at p. 1019; *Stein*, *supra*, 181 Cal.App.4th at p. 326.) The reason for this insistence on formal notice is simple: Formal notice ensures that the "maximum judgment" can be ascertained from the four corners of the operative complaint or statutorily authorized supplemental pleadings, thereby eliminating the messier case-by-case inquiries into what a defendant actually knew or reasonably should have known that would be required if actual or constructive notice were the operative standard.

A default judgment that awards relief beyond the type and amount sought in the operative pleadings is void. (*Becker*, *supra*,

---

11    A default may also be entered after a party's responsive pleading has been stricken as a discovery sanction. (E.g., *Simke*, *supra*, 195 Cal.App.4th at p. 1278.) In such instances, the default is less of an affirmative "tactical" choice not to participate in the lawsuit in the first place (*Stein v. York* (2010) 181 Cal.App.4th 320, 325) and more of a sanction for making bad "tactical" choices in how to litigate a case in which the defendant initially decided to participate.

28 Cal.3d at p. 493.)  Because it is void, it may be collaterally attacked at any time.  (*Ibid.*)  The remedy is to vacate and set aside the default *judgment*, not the precursor default.  (*Ostling v. Loring* (1994) 27 Cal.App.4th 1731, 1743.)  Once the default judgment is vacated, the trial court has the discretion to (1) reduce the default judgment to the types and amounts of relief properly pled in the operative pleadings or (2) give the plaintiff the option of amending her pleadings to include the previously omitted types or amounts of relief (but, in so doing, granting the defendant a further opportunity to avoid default by responding to the amended pleadings).  (*Greenup, supra*, 42 Cal.3d at p. 830; *Airs Aromatic, supra*, 23 Cal.App.5th at p. 1025; *Julius Schifaugh IV Consulting Services, Inc. v. Avaris Capital, Inc.* (2008) 164 Cal.App.4th 1393, 1398.)

## II.    Is *Cassel* Good Law?

*Cassel* held that a plaintiff bringing an accounting claim to recover the value of his partnership interest in a law firm was entitled to a default judgment of $305,690 even though his operative complaint only alleged the *type of relief*, but not any *amount*.  (*Cassel, supra*, 76 Cal.App.4th at pp. 1163-1164.) *Cassel* rested its holding on two propositions.  First, requiring a plaintiff to allege the *amount* of relief sought for an accounting claim would be self-defeating because such claims are viable only if the amount sought is "'unliquidated and unascertained.'"  (*Ely v. Gray* (1990) 224 Cal.App.3d 1257, 1262 (*Ely*), quoting *St. James Church v. Superior Court* (1955) 135 Cal.App.2d 352, 359; *Cassel,* at p. 1161.)  Second, courts have in marital dissolution cases permitted the entry of default judgments where the plaintiffs only alleged the *type of relief* in their operative pleadings, partly because defaulting defendants in those cases

13

are "in possession of the essential information necessary to calculate their potential exposure." (*Cassel*, at pp. 1161-1164.) Because an accounting claim involves the same sort of valuation of assets that occurs in a marital dissolution entailing the division of property, *Cassel* reasoned, the rule excusing the necessity to plead the amount of relief sought in martial dissolution cases should also apply to accounting claims. (*Ibid.*)

*Cassel* has been met with mixed reviews. At least one case has endorsed *Cassel*. (*Warren v. Warren* (2015) 240 Cal.App.4th 373, 378-379.) But three others—one decided before *Cassel* and two decided after—have charted a different path than *Cassel* and held that plaintiffs alleging accounting claims and claims involving valuation of assets, like any other plaintiff, may not obtain a default judgment in excess of the amount alleged in their operative pleadings. (*Ely*, *supra*, 224 Cal.App.3d at p. 1263; *Finney v. Gomez* (2003) 111 Cal.App.4th 527, 541-545 (*Finney*); *Van Sickle v. Gilbert* (2011) 196 Cal.App.4th 1495, 1527.)

We join the growing majority of cases rejecting *Cassel* and do so for two reasons.

First, the rule precluding plaintiffs from obtaining "more relief than is asked for in the complaint" is dictated by the "plain language" of section 580. (*Lippel*, *supra*, 51 Cal.3d at p. 1166.) In our view, neither of *Cassel*'s rationales overcomes the clear direction from our Supreme Court that section 580 "means what it says and says what it means." (*Ibid.*; *Greenup*, *supra*, 42 Cal.3d at p. 826 [courts insist upon a "strict construction" of section 580].) After all, noneconomic damages are notoriously difficult to fix, but a plaintiff is still required to plead her "educated guess" as to the amount of such damages. (§ 425.11; *Janssen v. Luu* (1997) 57 Cal.App.4th 272, 279.) Because a

14

plaintiff's ability to estimate a maximum value does not preclude the necessity to fix the actual value, the nature of an accounting claim does not justify a departure from section 580's plain language. Further, and as discussed above, the parties to a marital dissolution case may obtain a default judgment in an amount not alleged in the operative pleadings only where the statutorily mandated pleadings in such a case *preclude* them from alleging any such amount. (§ 425.10, subd. (b); Fam. Code, §§ 2331, 2104, 2105; see also *Finney*, *supra*, 111 Cal.App.4th at pp. 537, 542 [so noting].) No statute or statutorily mandated form precludes a plaintiff from pleading an amount of relief sought for an accounting claim or in an action involving the valuation of assets. The marital dissolution cases do not rest on any broader principle that parties seeking to value and divide assets should be excused from the statutory mandate of pleading the amount of relief sought, and *Cassel* was incorrect in reading them as doing so.

Second, *Cassel*'s rule impermissibly substitutes actual or constructive notice for formal notice because it predicates the propriety of a default judgment in accounting cases on whether the defaulting defendant knew or, by dint of his equal or greater access to information, should have known about his maximum exposure. (*Schwab*, *supra*, 114 Cal.App.4th at p. 1326 [noting how *Cassel*'s rule turns on the defaulting defendant's access to information].) This rule substantially dims section 580's "bright-line" rule of formal notice by replacing the straightforward inquiry into what is pled in the operative pleadings with a case-by-case inquiry into what individual defendants knew or should have known (*Airs Aromatic*, *supra*, 23 Cal.App.5th at p. 1018), and in so doing, risks depriving defaulting defendants of their

15

due process-based right to proper notice of their maximum exposure.  (*Finney*, *supra*, 111 Cal.App.4th at p. 541 [so noting].)

For these reasons, we decline to follow *Cassel*.

## III.  Does the Default Judgment Exceed the Relief Demanded by Plaintiff?

Because we decline to follow *Cassel*'s exception from the general rules limiting default judgments, we must examine whether the default judgment here "exceed[s]" "[t]he relief" "demanded in [plaintiff's] complaint."  (§ 580, subd. (a).)  In assessing the type and amount of damages demanded in the operative pleadings, it is well settled that a court must separately compare the amounts demanded and obtained for *compensatory* damages, and those demanded and obtained for *punitive* damages; that is because these two types of damages "differ[] . . . in both nature and purpose" and must be separately demanded. (*Becker*, *supra*, 27 Cal.3d at pp. 494-495; *Ostling*, *supra*, 27 Cal.App.4th at p. 1741.)  It is also well settled that a court must evaluate the relief pled against each defendant separately; that is because a complaint must specify against which defendant or defendants each claim is directed.  (*Heidary v. Yadollahi* (2002) 99 Cal.App.4th 857, 868; Cal. Rules of Court, rule 2.112(4).)

But where, as here, a plaintiff has specifically enumerated separate items of compensatory damages in her complaint against the sole defendant before us on appeal, how is a court to assess whether the amount of such damages obtained in a default judgment exceeds the amount demanded in the complaint?  Is the court to undertake this inquiry on an item-by-item basis (comparing the amount awarded in the default judgment for each item against the amount demanded *for that item* in the complaint)?  Or is the court instead to conduct a more aggregated

16

inquiry (comparing the *total* default judgment to the *total* amount demanded in the complaint)?[12]

### A. *Aggregate or itemized?*

We conclude that courts should compare the *total* compensatory relief granted by the default judgment to the *total* compensatory relief demanded in the operative pleadings, and we reach this conclusion for three reasons.

First, comparing the *total* amounts of compensatory relief demanded versus obtained is most consistent with the statutory and constitutional requirements of formal notice and their underlying rationale. As noted above, default judgments are limited to the types and amounts of relief demanded in the operative pleadings because that limit assures that a defendant's decision not to contest a lawsuit (and thus to accept a default judgment) is a "fair and informed" one. (*Lippel*, *supra*, 51 Cal.3d at p. 1166; *Greenup*, *supra*, 42 Cal.3d at pp. 826, 829.) When such a decision is made, it is necessarily made before the default is entered. At that moment in time, the defendant does not know which of the plaintiff's claims will have merit or which alleged items of damages will be recoverable: The only way to calculate one's monetary exposure from a default is to add up the various, non-duplicative items of damages demanded; the grand total is the price of default. Because the defaulting defendant's decision is made by examining the *total, aggregate* relief sought in the operative pleadings, the cap set by those pleadings should be assessed in the same manner.

---

[12] Because this issue was only tangentially addressed by the parties' initial briefs, we solicited further briefing on this question.

17

Conversely, an item-by-item approach does not accurately reflect a defaulting defendant's decisional calculus. The only way to compare the compensatory relief demanded with the compensatory relief obtained on an item-by-item basis (that is, on a claim-by-claim or item of damage-by-item of damage basis) is to know which claims or items of damages are meritorious, and which are not. But such determinations of merit are not made until long after the defendant makes the decision to default. Due to this temporal disconnect, the item-by-item approach would function solely as a "one-way ratchet" that would require the total default judgment to be reduced piecemeal for each individual claim or item of damage not eventually proven up, even though the defaulting defendant had—at the time of defaulting—accepted liability for the *aggregate* total of damages alleged, including those later-rejected claims or items of damage.

Second, comparing the *total* amounts of compensatory relief demanded versus obtained avoids penalizing a plaintiff for pleading her damages with greater specificity because, unlike the itemized approach, it does not cap the damages for each item on default at the amount demanded for such item in the operative pleadings. Because complaints with more detail provide more information for a defendant to use in making a "fair and informed" decision whether to respond to a complaint, the comparison of aggregate totals ends up better serving that defendant's due process rights.

Third, comparing the *total* amounts of compensatory relief demanded versus obtained is more consistent with the pertinent statutes and cases interpreting them. Sections 580 and 585 refer to "[t]he relief," "the principal amount" or "the amount" "demanded in the complaint" (§§ 580, subd. (a), 585, subds. (a) &

18

(b)), not the amount for each claim or item of damages demanded in the complaint.  The case law also uniformly looks to the "maximum judgment" as against a specific defendant, not the amount for each claim or item comprising that judgment. (*Greenup*, *supra*, 42 Cal.3d at p. 826; *Lippel*, *supra*, 51 Cal.3d at p. 1166; *Electronic Funds*, *supra*, 134 Cal.App.4th at p. 1174.)

**B.**    *Application*

In examining the total types and amounts of compensatory relief demanded in the operative complaint, several principles come into play.  Demands for relief may be made in *any* part of the complaint, not just in the prayer for relief.  (*Becker*, *supra*, 27 Cal.3d at p. 494; *Greenup*, *supra*, 42 Cal.3d at p. 829.)  But they must be demands for relief; "allegations of fact which [happen to] include numbers" will not count.  (*Heidary*, *supra*, 99 Cal.App.4th at p. 866.)  A demand for relief will be included in the total relief demanded even if it leaves it to the court to "do the math," either by incorporating the court's minimum jurisdictional limit (*Greenup,* at p. 830) or by providing the numbers needed for a mathematical calculation (*Electronic Funds*, *supra*, 134 Cal.App.4th at p. 1174).  Critically, however, a demand for relief will not be counted twice just because it is alleged under two different claims; duplicative damages recoverable under more than one theory of liability will only be counted once.  (E.g., *Schnabel v. Lui* (9th Cir.) 302 F.3d 1023, 1038.)

Applying these principles, the aggregate amount of compensatory damages demanded in plaintiff's SAC is $987,500.  She demanded $150,000 as her share of the proceeds from the sale of the Hollywood house.  As her share of the Oakley house, plaintiff demanded *either* $2,850,000 (that is, the $3,000,000 representing her share in both houses less the $150,000 as her

19

share of the proceeds from the Hollywood house) in damages *or* a constructive trust.  She demanded $700,000 for the value of Tag.  She demanded $120,000 for unpaid wages and $5,000 as waiting time penalties.[13]  And she demanded $12,500 as her half of the stock in the restaurant/lounge.  In total, this comes to either (1) $3,837,500 in damages, or (2) $987,500 in damages plus a constructive trust over the Oakley house.  (*Cf. National Diversified Services, Inc. v. Bernstein* (1985) 168 Cal.App.3d 410, 418-419 [with an "alternative judgment, a party recovers either the property or its value, but not both"].)  The default judgment awarded plaintiff $2,806,532 in compensatory damages plus a constructive trust over the Oakley house.  Thus, the default judgment exceeds the amount of compensatory damages demanded in the SAC by $1,819,032 ($2,806,532 less $987,500).  The default judgment is void to the extent of that overage.

The default judgment's remaining awards are valid.  The default judgment awarded $88,984 in punitive damages, which is less than the $4,000,000 plaintiff demanded.  The default judgment's awards of prejudgment interest and costs are also valid because their validity is not tied to what was alleged in the operative pleadings.  (*Hearn, supra,* 177 Cal.App.4th at pp. 1209-1210.)

Cohen offers two categories of arguments in response.

He asserts that the amount demanded in the SAC is less than $987,500 if the court compares what was demanded to what

_____

[13]  Although the unpaid wages and waiting time penalties arise from claims alleged solely against Tag, plaintiff alleged in the SAC that Tag was Cohen's alter ego, that allegation was deemed admitted by the default, and Cohen does not challenge it—or his liability for the judgment against Tag—on appeal.

20

was obtained on default on an item-by-item basis. This is true (although only with respect to the award representing plaintiff's equity in Tag), but irrelevant in light of the aggregate approach we adopt.

Cohen also raises three specific challenges to the trial court's calculation of what relief was demanded in the SAC. He argues that plaintiff did not properly demand $5,000 in monthly wages from Tag because she alleged that this wage was only a "token" gesture. Whether or not it was a token salary, it was still the promised salary and hence properly demanded as an unpaid wage. Cohen argues that the trial court's prejudgment interest award for the restaurant/lounge stock should be stricken, and cites *David S. Karton, A Law Corp. v. Dougherty* (2009) 171 Cal.App.4th 133 (*Karton*). *Karton* struck a prejudgment interest award in a default judgment because it was miscalculated (*id.* at p. 151); here, the SAC alleged the number of months the stock went unreimbursed prior to the entry of the default judgment and the trial court was able to apply the statutory rate of interest for that time period. Cohen finally argues that punitive damages awards are disfavored, and particularly so in cases involving a default judgment (*Nicholson v. Rose* (1980) 106 Cal.App.3d 457, 462-463), and are not awardable for a breach of contract (*Cates Construction, Inc. v. Talbot Partners* (1999) 21 Cal.4th 28, 61). Despite being disfavored, punitive damages may certainly be awarded on default if the requisite procedural steps—including serving a supplemental notice under section 425.115—are taken. Here, they were. And the trial court did not impermissibly award punitive damages on Sass's breach of contract claim; although the allegations underlying the breach of contract claim mirror those underlying her fraud claim, Cohen's default is an admission

to those allegations no matter which claim they support, and a fraud claim properly supports an award of punitive damages (Civ. Code, § 3294, subd. (a)).

## DISPOSITION

The default judgment against Cohen is vacated. The case is remanded with instructions for the trial court to exercise its discretion whether to (1) reinstate the default judgment after reducing the amount of compensatory damages awarded by $1,819,032, or (2) vacate the underlying default and allow plaintiff to file and serve an amended complaint demanding the type and amount of relief she seeks. The parties are to bear their own costs on appeal.

**<u>CERTIFIED FOR PUBLICATION.</u>**


_____, J.
HOFFSTADT

We concur:


_____, P. J.
LUI


_____, J.
ASHMANN-GERST

22